MARGARET KLINGBERG, Petitioner-Appellant, v. KENNETH KLINGBERG, Respondent-Appellee.

First District (3rd Division)   No. 78-791

Opinion filed January 31, 1979.

James C. Hickman, of Chicago, for appellant.

Peter Less, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The petitioner, Margaret Klingberg, appeals from certain provisions of a judgment dissolving her marriage to the respondent, Kenneth Klingberg. The petitioner contends that the circuit court erred in not awarding her certain amounts withdrawn from a joint savings account by the respondent and in denying her request that the respondent pay her attorney's fees. Although the respondent had not filed a brief in this action, we shall nevertheless consider the merits of the issues presented. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The record shows that the parties were married in May 1976 and that their marriage faltered 4 months later when the respondent left the petitioner. In the judgment for dissolution of marriage entered on March 3, 1978, the court found that the respondent had deserted the petitioner. (Ill. Rev. Stat. 1977, ch. 40, par. 401(2).) The court concluded that the respondent's withdrawal of $3500 from the parties' joint savings account and his disbursement of this money was not a dissipation of marital funds. The court also directed that the parties assume their respective attorney's fees. In ruling on the terms of the judgment, the court specifically found that both parties had contributed to the joint savings account.

At the hearing prior to entry of the judgment, the petitioner testified that she had been widowed in 1974 after 25 years of marriage and as a result had ownership of a suburban home. When she married the respondent, he moved into this home.

The petitioner was questioned about two savings accounts. Insurance proceeds from the death of the petitioner's first spouse were deposited in one account, and the account was in her name alone. The second account was in joint tenancy with the respondent; it was opened after their

marriage by the petitioner's deposit of $300, which was transferred from the account in her name. A later deposit of $2400 was made in the joint account: the petitioner provided $1200 from her other account, and the respondent provided an additional $1200 and became a signatory to the joint account. The petitioner also claimed that she made a total of $330 in other deposits from her funds into the joint account. The joint account reflects additional deposits until mid-September 1976 when the account totaled $3,889.66. No withdrawals occurred until September 24, 1976, when the joint account was closed by two withdrawals. The initial withdrawal was made by the respondent for $3500; the other withdrawal was made by the petitioner for the balance of funds remaining in the account. These transactions occurred about the time the respondent left the petitioner.

After their marital discord developed, the petitioner sold the home for $62,000; at that time the home had a mortgage of $13,000. The petitioner used the proceeds of the sale to purchase a $34,000 condominium where she currently resided. She claimed that she had no outside source of income and that she withdrew funds from the savings which were in her name to meet monthly expenses.

The respondent testified that he was 53 years old and currently employed as a printer with a gross salary of $300 per week. He claimed he was not in good health. When the respondent left the petitioner's home in September 1976, he moved into an apartment occupied by his daughter in a building in which his former wife also resided, giving the address of that building as his forwarding address. The respondent indicated that he placed $1200 in the joint savings account in July 1976 and later withdrew $3500, which he gave to his former wife for "present and future child support." He was unable to verify any amount which the petitioner may have contributed to that account from her own funds; he merely said that he gave the petitioner his weekly paycheck and retained several dollars for food he bought at work and for gasoline. The respondent further indicated that he was giving money to his 80-year-old mother for her care, as well as paying $50 per week for the support of one child from a prior marriage. He had also paid $90 per week to the petitioner for temporary maintenance during the course of these proceedings. He denied owning any assets of substance or having much money left at the end of each month because of gifts he made to his children.

The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*, effective October 1, 1977) is controlling here. Section 503(c) sets forth the procedure for property settlement and provides that "the court shall assign each spouse's non-marital property to that spouse." The marital property is then to be divided in accord with the

various factors set forth in section 503(c), which included the "contributions or dissipation of each party of the property." Marital property is defined in pertinent part by section 503(a):

"(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

❋ ❋ ❋

(2) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

❋ ❋ ❋

(6) Property acquired before the marriage." (Ill. Rev. Stat. 1977, ch. 40, par. 503(a).)

All property acquired during the marriage, no matter under what terms of title it is held, is presumed to be marital property, but that presumption is overcome by showing the source of the property was an exclusion set forth in section 503(a). Ill. Rev. Stat. 1977, ch. 40, par. 503(b).

Here, the petitioner maintains that the court erred in holding the joint bank account was marital property. She argues that nonmarital property remains as such no matter how it is held. She relies on the record, which she claims demonstrates that she contributed at least $1830 from her own funds to the joint savings account. Conceding the respondent's contribution of $1200, the petitioner classifies the remaining $859 in the account as marital funds. She therefore asserts that, at best, the respondent would be entitled to his $1200 contribution and the remaining $859 less the $389 she received when she closed the account; she computes that the amount the respondent would owe her pursuant to this calculation would be $1441 ($1830, the amount of her own contribution, less $389 she received). Alternatively, she suggests the marital funds be divided and that amount be added to her claim. In this regard she further maintains that the court erred in concluding that no dissipation of marital funds had occurred by respondent's withdrawal of $3500.

Although the point raised by this appeal has not previously been considered by an Illinois reviewing court, we find helpful decisions from other jurisdictions which have adopted a provision quite similar to section 503 of the Illinois Marriage and Dissolution of Marriage Act.[1] (*Daniels v. Daniels* (Mo. App. 1977), 557 S.W.2d 702; see *In re Marriage of Killgore* (Colo. App. 1974), 532 P.2d 386.) As stated in *Daniels,* "a spouse may by agreement, either express or implied, or by gift, transmute an item of separate property into marital property." (557 S.W.2d 702, 704.) Thus, the failure to properly segregate nonmarital property by commingling it with

---

[1] Section 503 is derived from section 307 of the Uniform Marriage and Divorce Act (9 Uniform Law Annot. 455, 490 (1973).)

marital property evinces an intent to have the former property treated as part of the marital estate. (*Jaeger v. Jaeger* (Mo. App. 1977), 547 S.W.2d 207, 211.) Absent evidence to the contrary, as here, treating nonmarital property in this manner will result in its transmutation to marital property. ■■ Applying the above principles, we reject petitioner's characterization that a portion of the joint savings account is nonmarital property. It is true that a substantial portion of the account was established by funds contributed from each spouse, who obtained the money prior to the marriage. However, from the facts presented, the parties apparently intended, in establishing such an account shortly after their marriage, to use it for their mutual benefit, and the account was treated accordingly until it was closed. (See *In re Marriage of Altman* (1974), 35 Colo. App. 183, 530 P.2d 1012.) There is no convincing evidence to suggest that the parties would treat the joint account proceeds in any other manner. And our determination is further supported by the fact that the title to the petitioner's home and a substantial portion of her savings attained before the marriage were retained in her name alone. Thus, the trial judge's conclusion that the joint account funds were marital property is not against the manifest weight of the evidence.

Petitioner's suggestion that she would be entitled without further consideration to at least the amount she deposited in the joint account would result in the adoption of the tracing of nonmarital property into marital property. (*Turley v. Turley* (Ky. 1978), 562 S.W.2d 665.) However, we reject this concept under the facts presented. To approve as a rule of law the proposition that petitioner advances would in many instances result in complicated financial determinations and potential marital discord as noted in the concurring opinion of *Turley.*

While we conclude that the joint account was marital property, we find that the trial court's conclusion that the respondent did not dissipate the funds is contrary to the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) The record establishes that the respondent withdrew a substantial portion of the joint account at the time that he and the petitioner separated. He then gave this money to his former wife for child support, although he was not then in arrears in these payments. The dispersion of the funds in this manner demonstrates that the payment was not made for any marital purpose. (See *Gerhardt v. Gerhardt* (1974), 18 Ill. App. 3d 658, 310 N.E.2d 224.) Rather, the respondent's action was designed to use marital property for his sole benefit and for a purpose unrelated to the marriage, at a time that the marriage was undergoing an irreconcilable breakdown. The respondent acted contrary to the best interests of the marriage in his haste to reach the bank to withdraw $3500 from the joint account at about the time he left the petitioner. The evidence leads to the conclusion that the

money was taken to deprive the petitioner of it under circumstances which show that the respondent was attempting to seize marital property before he left the petitioner, especially since he paid this money to his former wife for a questionable reason. We conclude that the trial judge should, therefore, reconsider the property disposition and apply the relevant factors set forth in section 503(c) to compensate the petitioner for the respondent's dissipation of funds.

■■ Finally, we are of the opinion that the court did not err in requiring both parties to assume their own attorney's fees, based on their own financial resources. (Ill. Rev. Stat. 1977, ch. 40, par. 508.) Examination of the record indicates that the respondent's assets were limited. The petitioner's assets were also limited, but she appeared to be better off than the respondent, who also had certain financial obligations. We cannot conclude that the court erred in denying the petitioner's request that the respondent pay her attorney's fees.

The judgment of the circuit court regarding payment of attorney's fees is affirmed. Its judgment concerning disposition of the proceeds in the joint bank account is reversed, and this cause is remanded for further proceedings regarding those proceeds, in accord with the views expressed herein.

Affirmed in part, reversed in part, and cause remanded for further proceedings.

McNAMARA and JIGANTI, JJ., concur.