In re MARRIAGE OF RUTH ISABELL EMKEN, Petitioner-Appellant, and HENRY EDWARD EMKEN, Respondent-Appellee.

Third District No. 79-964

Opinion filed October 21, 1980.

Kerry R. Cordis, of Princeville, for appellant.

John M. Baudino, of Baudino & Potter, of Farmington, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This appeal is from a judgment of the Circuit Court of Peoria County dividing the property of the parties and denying maintenance to the wife following a dissolution of marriage.

Ruth Isabell Emken married Henry Edward Emken in 1966 when she was 44 years old and he was 45 years old. At the time of the marriage, both were widowed; both had children who were fully emancipated; the wife owned a 100-acre farm, subject to a mortgage of $13,000; and the husband had one-half fee interest in a 120-acre farm and a life estate in the other one-half interest. After nearly 12 years of marriage, the wife left the husband, and in November of 1977, she filed a petition for dissolution of the marriage. Dissolution was granted, and after a separate hearing, the court found in favor of the husband's averments as to what was marital property and what was not, and then ordered the husband to pay the wife $10,890.37 to equalize the marital property in the possession of each. The court also denied the wife's claims for maintenance and for attorney's fees, and this appeal followed.

The wife's first contention is that the husband should not have been allowed to claim as nonmarital property the sum of $14,257.72 which he had transferred from his sole name into a joint checking account at the time of the marriage. During the marriage this joint account was used to pay household bills and the operating expenses of the husband's farm. Although the wife sometimes wrote the checks, all deposits to this account were from funds of the husband. The account balance fluctuated from $1,000 to $19,000 during the marriage. According to the husband's

testimony, about $8,000 of the money originally deposited in the joint account was used to purchase a new combine. The wife testified that she withdrew $8,258.57 from this joint account when she left him, and she stated that the income from her farm and her investments went into separate accounts in her name alone.

The wife cites the case of *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, where, both the husband and wife having contributed money to a joint account, the trial court refused to return to the wife $1,500 of premarital funds she had deposited. The reviewing court affirmed and adopted the "transmutation" theory that the failure to segregate nonmarital property by commingling it with marital property indicated an intent to treat the nonmarital property as part of the marital estate. The court said, "Absent evidence to the contrary, as here, treating nonmarital property in this manner will result in its transmutation to marital property." (68 Ill. App. 3d 513, 517, 386 N.E.2d 517, 520.) Thus, in *Klingberg* the court utilized the transmutation theory to preserve the presumption of gift which had been a part of Illinois law prior to the enactment of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) See *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831; *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018.

Other districts of the appellate court have taken a different view of such situations. In the case of *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762, the court cited section 503(a)(2) of the new act, which provides that property acquired in exchange for nonmarital property is also nonmarital property, as abolishing the prior presumption of gift when one spouse's property is transferred into joint ownership. The same view was expressed in *In re Marriage of Key* (1979), 71 Ill. App. 3d 722, 723, 389 N.E.2d 963, 964, where the court said:

> "We conclude that where, as here, identifiable, nonmarital assets, whether in the form of cash or tangible property, have been exchanged for jointly held property, the parties, upon dissolution of marriage are entitled to a refund of their original contribution * * *."

Additional support for this conclusion is to be found in section 503(b) of the act, which provides:

> "All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, *regardless of whether title is held individually or by the spouses in some form of co-ownership* such as joint tenancy, tenancy in common, tenancy by the entirety, or community property." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 40, par. 503(b).)

If the manner of holding title is of no consequence in applying the marital property presumption to property acquired during marriage, then the manner of holding title would similarly have no bearing in determining the status of property acquired in exchange for nonmarital property. "Otherwise, the presumption of marital property under section 503(b) would engulf and render largely meaningless the exception in 503(a)(2) by limiting the exchange exception to separate property which the owner retains in its original form, a patent contradiction in terms." *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 676, 402 N.E.2d 332, 336.

■■ Section 503(c)(1) requires the trial court to divide the marital property in just proportions, considering as one of the relevant factors, "the contribution or dissipation of each party in the acquisition * * * of the marital and non-marital property * * *." The trial court in the case at bar did exactly that when it allowed the husband to claim $14,257.72 as nonmarital property. That was the sum of two bank accounts which were his nonmarital property at the time of the marriage. The evidence indicated that he used about $8,000 of that money to acquire a combine for his farm and that the wife took more than $8,250 from the joint account when they separated. The latter amount might be considered to come within the classification of "dissipation" as used in the statute. We also think it noteworthy that this account was used for the income and expenses connected with the husband's farm operation. Each party's farm business was a separate nonmarital asset, which is a significant factor to consider when trying to ascertain the intention of the parties. (See Justice Barry's majority opinion, *In re Marriage of Crouch* (1980), 88 Ill. App. 3d 426, 410 N.E.2d 580.) Consequently we hold that the trial court's ruling which allowed the husband to reclaim his original contribution to the joint checking account was not contrary to the manifest weight of the evidence.

■■ The wife next asserts as error the trial court's allowance to the husband of $18,253.57 representing certain farm equipment and 3,000 bushels of corn valued as of the date of marriage. She argues that the husband failed to meet his burden of showing this property to be nonmarital and that he failed to show that he did not dissipate the value of the equipment or the proceeds from the sale of the corn. We do not agree that the husband had the burden of establishing the nonmarital character of this farm property. The statute provides that property acquired during marriage is presumed to be marital property (section 503(b)) and that property acquired before marriage is nonmarital property. Thus the presumption does not enter into the determination of whether the husband's farm equipment and grain acquired before marriage are nonmarital property; they clearly are. The wife does not deny that the items in question were owned by the husband before marriage and were

connected with his farm business. In the absence of any evidence that the husband intended this property to become marital property after the marriage, the trial court quite correctly found that the husband was entitled to a credit for $18,253.57 nonmarital property acquired before the marriage.

■■ The wife's third contention is that the trial court improperly valued certain investments acquired by the husband during marriage in that allowances were made for early withdrawal penalties and for income tax liability. The wife argues that such expenses are speculative since the husband has no plans to cash in these investments, but we think it clear that the present market value of these investments should be reduced by the expenses and liabilities which would be incurred when selling them. The trial court did not err in so ruling.

■■ Finally, the wife claims that the trial court abused its discretion in refusing to award her maintenance because, among other things, she has no skills and she had helped the husband accumulate his assets for 12 years. In its opinion, the trial court denied her request for maintenance with a finding that she had sufficient means and income to support herself. The court took into consideration the length of the marriage, the fact that she has only herself to support, her present employment, the extent of her nonmarital property, and her aliquot share of the marital property in making its decision. Since we should not substitute our judgment for that of the trier of fact who heard the testimony and saw the witnesses, we conclude that the denial of maintenance was not contrary to the manifest weight of the evidence.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, concurring in part and dissenting in part:

While I agree with the majority's decision regarding maintenance and attorney's fees, I must dissent from that portion of the opinion which finds the $14,257.72 in the checking account to be nonmarital property, affirms the trial court's allowance of $18,253.57 for the husband's farm equipment, and permits deductions from the husband's net worth for early withdrawal penalties and income tax liability regarding certain investments.

My initial disagreement with the majority stems from its characterization of the $14,257.72, which the husband had in his savings and checking account prior to marriage as nonmarital property which was deductible from his marital assets. This money was transferred into a joint

account subsequent to the marriage, and the money in this account was used to pay household bills and farming expenses. The amount in the account fluctuated from $1,000 to $19,000 during the marriage. Under this set of facts it is clear that *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, is controlling. In *Klingberg*, the court held that where nonmarital property is commingled with marital property, this evinces an intent to treat it as marital property. Such a presumption is undisputable in the instant case. There was clearly commingling of nonmarital funds with marital funds in that funds earned after the marriage, marital property, were deposited in the account. The account was used to pay household expenses. Under such circumstances, the only conclusion which can be reached is that there was an intent to treat the funds as marital property.

The second area in which I disagree with the majority concerns its classification of the farm implements which the husband owned prior to the marriage as nonmarital property. The majority bases this conclusion on a faulty premise—that there was no evidence that the husband intended this property to become marital property after the marriage. On the contrary, there was more than adequate evidence to find the requisite intent. Although the various farm implements were all owned by the husband prior to the marriage, they were used in farming the land so as to provide income for the married couple. Further, almost all the implements were traded in for new farm equipment which was used to farm the land and, therefore, provide a living for two of them. Such actions show a clear intent to use the nonmarital property to support the couple, thus transforming it into marital property. In addition, the new farm equipment was purchased with marital funds as well as the old implements. This constitutes commingling of marital and nonmarital funds. (See *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018.) In the absence of any evidence to rebut the presumption that such commingling evinces an intent to treat the property as marital property, the property must be considered as transmuted into marital property.

Such a result does not, of course, mean that the husband's contribution of the assets to the marriage should not be taken into account. It does mean, however, that the husband should not automatically be given complete credit for the value of the implements. Instead, the implements must be considered as part of the marital assets and the husband's contribution must be weighed as one of several factors in deciding how to divide the marital property.

My final area of disagreement concerns the majority's permitting the husband deductions for early withdrawal penalties and income tax liability regarding certain investments. While I agree that the present market value should be reduced by the expenses and liabilities which

would be incurred in selling them, it is impossible to determine what those expenses and liabilities would be. The penalties and income tax liabilities are variable, depending on whether and if the husband should decide to cash in or sell the investments. Indeed, the husband testified he was not certain if he was even going to cash in his Keough Plan or make certain early withdrawals. Therefore, such expenses and liabilities are, to say the least, speculative, and the husband should not have been allowed to deduct them from his share of the marital property. Had the husband presented a concrete plan in which he could show the court what his expenses and liabilities would be, then I would not hesitate to grant him such a deduction. However, in the absence of such a plan, these factors are variables which the court cannot accurately assess and, therefore, no credit can be given for them.

For the reasons stated, I concur in part and dissent in part.