In re MARRIAGE OF SHIRLEY JOHNSON, Petitioner-Appellee and Cross-Appellant, and EUGENE G. JOHNSON, Respondent-Appellant and Cross-Appellee.

First District (2nd Division)    Nos. 80-1334, 81-1893 cons.

Opinion filed April 27, 1982.—Rehearing denied June 1, 1982.

Arnold B. Kalnitz, of Chicago, for appellant.

Roy W. Sears and Harry C. Lee, III, both of Eckhart, McSwain, Hassell & Silliman, of Chicago, for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:
We herein consolidate two appeals. Shirley Johnson petitioned for dissolution of her marriage to Eugene G. Johnson. Final judgment for dissolution was entered on April 21, 1980. Respondent Eugene G. Johnson appeals from the maintenance awarded petitioner and the terms of the property settlement, and alleges errors by the trial court in considering affidavits in lieu of evidence. Petitioner cross-appeals the maintenance awarded her and the terms of the property settlement. Subsequent to the filing of the appeal and cross-appeal, petitioner brought a post-decree proceeding seeking a money judgment for arrearage in temporary support which accrued prior to the entry of the judgment of dissolution of marriage. On July 1, 1981, judgment was entered in favor of petitioner in the amount of $10,489.54 ($1,489.54 due as temporary support for the period through August 13, 1979, pursuant to a judgment entered October 31, 1979, and $9,000 due as temporary support for the period from August 13, 1979, to April 21, 1980, the date of the judgment of dissolution). Respondent appeals that judgment and the trial court's denial of respondent's motion to strike petitioner's reply in the post-decree proceeding.

Eugene and Shirley Johnson were married in 1951 and lived together until their separation in July 1977. During the marriage the parties enjoyed a middle to upper-middle class life style. They have two adult children. Both parties were 53 years old and in relatively good health at the time of

the trial. Petitioner has a bachelor's degree in psychology from the University of Illinois. She was unemployed through most of the marriage, until approximately eight years prior to trial when she began conducting preliminary interviews in the personnel field. She was employed at this job one day per week and earned $2,109 in 1978. There was conflicting testimony as to her employment potential. One of respondent's witnesses was a director of employee relations at a local hospital who testified that there were numerous opportunities in the personnel field for someone with petitioner's qualifications. Salaries for these positions ranged from $13,000 to $18,000 per year. Petitioner testified that although she did not think she could work full-time because she had not done so in 28 years, she might be able to work two or three days a week. She also testified that there were very few job openings which were appropriate for her and for which she was qualified. Petitioner's original affidavit indicated that she had net yearly expenses of $25,354. Her amended affidavit, filed after completion of the trial, listed those expenses as $21,711. The trial court ruled that her life style called for expenses of more than $2,000 per month.

Respondent is employed by Johnson and Genrich, Inc. (J&G), an executive recruiting firm, and Metropolitan Business Reports, Inc. (Metro), a credit reporting firm. Both corporations were organized and operated by respondent. He owns 100% of the J&G stock and 24% of the Metro stock. The remaining 76% of the Metro stock is owned by J&G. Respondent, therefore, effectively owns both firms in their entirety. His Federal income tax returns show his gross income in 1978 as $37,000. Between 1974 and 1978, his income varied from a low of $30,000 in 1977 to a high of $50,000 in 1975. Much of the confusion at trial regarding his income can be attributed to his tax returns having been prepared on a calendar year basis while his wholly owned corporations operated on a fiscal year ending March 31.

After awarding each party household furnishings, an automobile and cash-on-hand, the trial court valued and divided the remaining property as follows:

Nonmarital property to petitioner:

| | |
|---|---:|
| Savings accounts | $21,714.77 |
| Stock | 851.50 |
| Credit for forgiveness of debt due petitioner's father | 6,503.16 |
| | $29,069.43 |

Marital property to petitioner:

| | |
|---|---:|
| Marital residence | $87,000.00 |
| Savings accounts | 41,347.77 |
| Securities | 36,149.08 |
| | $164,496.85 |

Marital property to respondent:

| | |
|---|---:|
| J&G corporate stock | $145,000.00 |
| Metro corporate stock | 45,834.00 |
| Respondent's interest in profit-sharing plan | 34,166.00 |
| | $225,000.00 |

The court also ordered respondent to execute a promissory note to petitioner for $36,754. This amount consists of a $30,251 "equalizing note" designed to give the parties equal property settlements, and a $6,503 credit for the amount of petitioner's nonmarital contribution to settlements, and a $6,503 credit for the amount of petitioner's nonmarital contribution to the marital residence. The note provides for an annual interest rate of 12% and is payable in 144 monthly payments. The court also determined that petitioner lacked sufficient property, including marital and nonmarital property apportioned to her, to provide for her reasonable needs and was unable to support herself through appropriate employment and was otherwise without sufficient income. The court therefore ordered respondent to pay petitioner permanent maintenance of $900 per month.

Petitioner's post-decree proceeding was based on a September 19, 1977, court order directing respondent to pay petitioner temporary support of $250 per week. In May 1979, petitioner filed a motion seeking relief for arrearage in the payment of that support. On August 13, 1979, respondent filed a petition seeking modification of the temporary support order based on his lack of funds. On October 31, 1979, the trial court (per Judge Burks) entered judgment against respondent for $1,850 for arrearage in temporary support payments through August 13, 1979. No specific action was taken concerning respondent's petition seeking modification of the temporary support order. Respondent's motion to vacate or stay enforcement of the October 31 judgment was denied.

Final judgment for dissolution of marriage was entered by Judge Burks on April 21, 1980. No reference was made to the $1,850 judgment or other unpaid temporary support in this final judgment. However, after allocating marital and nonmarital property between the parties and providing for permanent maintenance, the judgment of dissolution ended by stating:

"Y. That, except as hereinabove otherwise provided, any and all right, claim, demand or interest of either party against the other, arising out of their marital relationship or otherwise, and any and all right, title, claim or interest of either party in and to the property of the other party, of whatever kind, nature and description, and whether real, personal or mixed, which either party now owns, controls or hereafter acquires from any source whatsoever,

including dower, homestead, jointure or otherwise, shall be and the same are hereby forever barred, terminated and ended; provided, however, that nothing in this paragraph shall be construed to release, limit or abridge the obligations of either party fully to execute, perform and carry out the provisions of this Judgment of Dissolution."

On September 17, 1980, petitioner filed a post-decree petition seeking $9,000 and alleging that respondent failed to pay temporary support from August 13, 1979, through the entry of the judgment of dissolution on April 21, 1980. Respondent admits he paid no support during this period. Respondent filed a motion to strike petitioner's post-decree petition on the grounds that the issue was *res judicata* and also that it was barred by paragraph Y of the judgment of dissolution. Respondent's motion to strike was denied and he filed an answer to the petition. Petitioner filed a reply to the answer. Respondent then filed a motion to strike the reply on the ground that it was not a plain and concise pleading as required by section 33 of the Civil Practice Act. His motion was denied.

The trial court entered an order on petitioner's post-decree petition on July 1, 1981. The court (per Judge Burks) held that paragraph Y of the judgment of dissolution did not abolish petitioner's rights in the unpaid support established by the September 19, 1977, court order. The court ruled that respondent owed petitioner $1,489.54 from the judgment entered on October 31, 1978 ($1,850 minus $360.46 received), and an additional $9,000 as unpaid temporary support for the period from August 13, 1979, to April 21, 1980.

*Appeal No. 80-1334*

Respondent's first contention on appeal from the original dissolution action is that the maintenance awarded by the trial court is unwarranted in view of section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1979, ch. 40, par. 504(a)). Section 504(a) states that maintenance can be awarded only where the court finds that the party seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is unable to support herself through appropriate employment, or is otherwise without sufficient income. (Ill. Rev. Stat. 1979, ch. 40, par. 504(a).) The trial court in the instant case specifically found that petitioner met the requirements of section 504(a).

■■ The awarding of maintenance is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless it amounts to an abuse of discretion or is against the manifest weight of the evidence. (*Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 203, 387 N.E.2d 346; see also *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 349, 239 N.E.2d 792.)

Absent an abuse of discretion, a reviewing court should not substitute its discretion for that of the trial court. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) Such an abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court. (78 Ill. App. 3d 1123, 1127.) Nothing in the record convinces us that no reasonable man would agree that petitioner's potential employment and the property apportioned her would be insufficient to provide for her reasonable needs. The parties had enjoyed a fairly comfortable life style during their marriage and there was evidence that petitioner would experience some difficulty in finding employment capable of keeping her in that life style. Since there is no evidence that the trial court abused its discretion in awarding maintenance to petitioner, that portion of the court's judgment for dissolution is affirmed.

Respondent's next contention is that $900 per month maintenance is excessive in view of petitioner's needs, the property settlement and respondent's ability to pay. Petitioner counterappeals that $900 per month is insufficient, citing her needs, respondent's ability to pay, the 28-year duration of the marriage and the standard of living established during the marriage. As with the decision whether to award maintenance, the amount of maintenance awarded lies within the discretion of the trial court, and its decision will not be set aside unless it is contrary to the manifest weight of the evidence or amounts to an abuse of discretion. *In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 59, 404 N.E.2d 1092.

■■ The trial court appears to have considered the factors set out in section 504(b) for determining the proper amount of maintenance. (See Ill. Rev. Stat. 1979, ch. 40, par. 504(b).) The court stated that it considered the duration of the marriage, the comfortable standard of living established by the parties, the fact that most of the property apportioned respondent as part of the property settlement was income-producing while much of that given petitioner was not, the needs and other resources of the parties as well as other factors. We therefore find the trial court did not abuse its discretion and the final judgment was not against the manifest weight of the evidence. See *Gauger v. Gauger* (1979), 70 Ill. App. 3d 378, 383, 388 N.E.2d 123; *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 810, 375 N.E.2d 961.

Respondent's next contention is that the value assigned to J&G and Metro was excessive, resulting in a disproportionate property settlement. Petitioner counters that the corporations were undervalued. We note that the parties agreed that shareholder's equity was the proper measure of the corporations' value and that at the time of trial there were no plans to sell the corporations.

■■ At the outset, respondent argues that the valuation of the corporations was overstated because the trial court failed to consider the income tax

ramifications of a theoretical sale of the two businesses. In support of his position, respondent cites *In re Marriage of Emken* (1980), 89 Ill. App. 3d 667, 411 N.E.2d 599, *aff'd in part and rev'd in part* (1981), 86 Ill. 2d 164, 167, 427 N.E.2d 125. The majority in *Emken* held that the present market value of certain investments should be reduced by the expenses and liabilities incurred by a sale of the investments. (89 Ill. App. 3d 667, 671.) Justice Stouder dissented from that portion of the opinion, arguing that such expenses and liabilities were speculative because there were no plans to dispose of the investments. Had there existed a definite plan to sell the assets and therefore incur specific expenses and liabilities, Justice Stouder would have permitted a deduction from the gross amount of the marital property. (89 Ill. App. 3d 667, 673.) We believe the reasoning used by Justice Stouder in his dissent is the better approach. For a court to speculate as to the existence and amount of future tax liabilities from a sale, particularly when no sale is imminent, would amount to a mere guessing game. The proper approach was to ignore any speculative tax implications from a hypothetical sale of J&G and Metro. The Illinois Supreme Court has recently ruled in favor of the position taken by Justice Stouder in his dissent. *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 167, 427 N.E.2d 125.

■■ Respondent also asserts that the valuation placed on the corporations was excessive because the court failed to take into account that he owned only 24% of Metro's stock. This contention is partially meritorious. The court set the value of the two corporations at $190,834. If shareholder's equity is used as the measure of value, as agreed by the parties, the total valuation should have been $192,867.97. The following chart, based on the financial statements of the two corporations, illustrates how $192,867.97 is reached.

| | | |
|---|---|---|
| Gross shareholder's equity of J&G | $152,844.26 | |
| Less book value of 76% of Metro held by J&G as listed on J&G books | 7,600.00 | |
| Shareholder's equity of J&G (Less (J&G's interest in Metro) | | $145,244.26 |
| Shareholder's equity of Metro | | $ 47,623.71 |
| Total shareholder's equity of two corporations | | $192,867.97 |

As the chart illustrates, the book value of Metro stock listed on J&G's books ($7,600) is subtracted from J&G shareholder's equity. If shareholder's equity is to be used to value the corporations, it must be used throughout the computations. Since respondent effectively owns both corporations in their entirety and the values are based on shareholder's

equity, we believe that the fairest way to determine the total value is to add the net shareholder's equity of each business.

While $192,867.97 is the shareholder's equity of the two corporations, respondent correctly asserts that this amount should be reduced by his debt of $19,282.97 to J&G. Petitioner admits in her brief that the valuation of J&G should be reduced by the amount of respondent's indebtedness. The proper net valuation of the two corporations should have been $173,585. The trial court, therefore, overstated the value of the two corporations by $17,249. One-half of this amount ($8624.50) should be subtracted from the equalization note which the court used to balance the amount of property apportioned the parties in the property settlement.

Respondent's next contention is that the trial court erroneously gave petitioner a $6,503 credit as nonmarital property. Petitioner and her sister were the sole beneficiaries of their father's estate when he died in 1969. At that time, their father held a $10,158 mortgage on the parties' marital residence and $2,848.70 mortgage on petitioner's sister's residence. The sisters agreed that petitioner and respondent would pay the sister half the difference between the two mortgages ($3,654.85) and their father's estate would release both mortgages. Petitioner claimed that the difference between the mortgage balances was a nonmarital asset because it was an inheritance. (See Ill. Rev. Stat. 1979, ch. 40, par. 503(a).) The trial court apparently agreed with petitioner and ruled that she was entitled to a $6,503 credit as non-marital property. ($10,158 mortgage debt, reduced by $3,654.85 paid to sister, leaves $6,503.15, rounded to $6,503.) This amount was added to the equalization note which was made payable to petitioner. Respondent argues that the arrangement between the parties and petitioner's sister was merely an extinguishment of the parties' joint obligation. The act of increasing their joint equity in the marital residence is claimed to evince an intention to treat the inheritance as marital property. Petitioner asserts that no such intention existed and the arrangement was made solely to ease the administration of her father's estate.

■■ The facts of this case favor respondent's position. As was stated in *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, the failure to properly segregate nonmarital property by commingling it with marital property evinces an intent to treat the former as part of the marital estate. (68 Ill. App. 3d 513, 516-17.) In the instant case, marital funds were used in 1970, to extinguish a mortgage debt in the marital residence. The intent to increase the parties' joint equity seems clear. By commingling the nonmarital inheritance with the marital residence seven years before the parties separated and ten years before their marriage was dissolved, petitioner showed an intent to benefit both her and respondent by converting the nonmarital property into marital property. (See *Klingberg*

*v. Klingberg* (1979), 68 Ill. App. 3d 513, 517; see also *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 529, 427 N.E.2d 1239.) It was therefore error for the trial court to award petitioner a $6,503 credit as nonmarital property. This amount should be subtracted from the note payable to petitioner. See generally *In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 780, 407 N.E.2d 1045.

Respondent's next contention is that the equalization note is unnecessary because of the income tax considerations upon a potential sale of his two businesses. In the alternative, respondent asserts that the 12% interest rate applied to the equalization note is usurious. We have already discussed the speculative nature of potential income tax ramifications. The remaining issue is whether the trial court could require that respondent's promissory note to petitioner (which amount should be reduced by $15,127.50 pursuant to the above analysis) bear interest at 12% annually.

■■ Respondent cites the Illinois statute setting interest on judgments recovered before any court at 9%. (Ill. Rev. Stat. 1979, ch. 74, par. 3.) Petitioner's response is that the trial court properly set the interest rate at 12% to help achieve an even distribution of property. Petitioner argues that the marital residence, constituting almost half of the marital property apportioned her was not income-producing. This fact, however, does not justify setting an interest rate in excess of that permitted by statute. Petitioner's appellate brief acknowledges that respondent could prepay the promissory note and thereby avoid the 12% interest payments. In view of the plain wording of the court's judgment and petitioner's acknowledgment that the 12% could be avoided by prepayment, petitioner's assertion that the 12% was part of the judgment itself and not interest on the judgment is untenable.

■■ Respondent's final contention on appeal from the dissolution proceeding is that the trial court improperly used petitioner's affidavit and amended affidavit in lieu of testimonial evidence concerning her monthly expenses. The use of affidavits to aid a court in determining property settlements and maintenance awards is not improper. (See generally *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 658, 409 N.E.2d 321 (written budget admitted and considered by court); *In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 404 N.E.2d 1140.) A review of the record reveals that the affidavits in this case were used by the court as an aid in understanding the extensive testimony regarding the needs of the parties. There is nothing to indicate that the judgment was based on these affidavits in lieu of testimonial evidence.

The award of $900 per month maintenance is affirmed. The promissory note payable to petitioner is modified in that the equalizing portion is reduced by $8,624.50 (taking into account the revaluation of the shareholder's equity and respondent's debt to J&G) and the $6,503 credit as

nonmarital property awarded petitioner is stricken. The amended promissory note is hereby modified to provide for a principal sum of $21,626.50. In addition, the interest rate on the balance due is lowered to 9%. The remainder of the judgment of dissolution is affirmed.

*Appeal No. 81-1893*

Respondent's first contention on appeal from the post-decree order is that any claim for arrearage in temporary support was explicitly barred by the judgment of dissolution of marriage, specifically, paragraph Y. He therefore asserts that the post-decree judgment was improper. Petitioner responds that a trial court has no authority to modify past-due installments of temporary support. Therefore, even if the trial court had intended to bar any claims for the past-due installments of support, which petitioner argues was not the court's intention, the trial court was powerless to do so. ● 8  Past-due installments of support are a vested right and the court has no power to modify them. (*Collins v. Collins* (1977), 47 Ill. App. 3d 258, 263-64, 361 N.E.2d 787.) In addition,

> "[W]hen a court decrees that an amount of temporary support is to be paid, the court cannot reduce it retroactively. As each installment becomes due, the right to that installment is vested. The party entitled to receive this payment has a right to expect, plan, and look forward to its receipt, while on the other hand the duty to continue payment cannot be reduced or eliminated." (47 Ill. App. 3d 258, 264; see also *Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 821, 408 N.E.2d 752 (past-due installments of child support are vested rights and are not subject to reduction either as to amount or time of payment).)

In the instant case, the trial court in the original dissolution proceeding did not have the power to bar claims relating to past-due temporary support payments.

We note, however, that even without the use of the vested rights approach, petitioner would prevail on this issue. Both parties have cited *Winter v. Winter* (1978), 69 Ill. App. 3d 359, 363, 387 N.E.2d 695, for the proposition that paragraph Y of the judgment of dissolution should be construed reasonably and as a whole, giving effect to the apparent intention of the trial court. We believe the intention of the trial court was that paragraph Y did not bar any claims for past-due temporary support payments. This intention is illustrated by the fact that the same judge (Judge Burks) entered both the original judgment of dissolution, including paragraph Y, and the post-decree judgment ordering respondent to pay petitioner $10,489.54. Clearly the judge who entered the judgment of dissolution would know the meaning he intended by the order. In addition, there is nothing in the record of the dissolution proceeding

stating that claims pursuant to the October 31, 1979, judgment (for arrearage in temporary support) or any other past-due support payments were barred by the judgment of dissolution. Whether we consider the intentions of the trial court or the restrictions on that court's power, the result is the same. The action for past-due temporary support payments owed petitioner was not barred by paragraph Y of the judgment of dissolution.

■■ Respondent's assertion that petitioner's failure to appeal paragraph Y estops her from contesting the section on appeal is likewise without merit. Since we hold that paragraph Y does not bar actions for past-due payments, petitioner had no reason to appeal paragraph Y. Any action she sought to bring for those payments (such as the present post-decree action) was proper regardless of paragraph Y.

Respondent's next contention is that petitioner's claim for past-due temporary support payments is *res judicata.* He asserts that petitioner raised her claim for arrearages prior to entry of the judgment of dissolution and that the issue was fully litigated at that time. Respondent argues that since the issue was presented to the trial court, it must be deemed to have been fully adjudicated upon entry of the judgment of dissolution. Petitioner responds that to allow the judgment of dissolution to be *res judicata* with respect to requests for past-due installments of temporary support would allow the trial court to do indirectly what it could not do directly: modify petitioner's vested rights in the past-due installments. She argues that the question of arrearages in temporary support payments was never litigated in the original dissolution proceeding and, therefore, the judgment of dissolution did not resolve that question.

■■ We believe that petitioner has correctly analyzed the issue. Since the trial court did not have the power to directly modify petitioner's vested interests in the past-due installments (see *Collins v. Collins* (1977), 47 Ill. App. 3d 258, 264), that court should not be able to indirectly modify those interests, even if it wished to do so. In addition, the record reveals that the question of arrearages in temporary support was not litigated in the dissolution proceeding. Direct evidence relating to the past-due amounts was never presented or requested. It is therefore understandable that the comprehensive, 19-page judgment of dissolution makes no reference to the arrearage. We find, therefore, that the judgment of dissolution is not *res judicata* to the question of arrearages in temporary support.

Respondent's next contention is that paragraph Y bars petitioner's right to enforce the interlocutory judgment for arrearage of $1,850 (which currently has a balance of $1,489.54). This issue has already been discussed in relation to the claim for the arrearage accumulating from August 13, 1979, to April 21, 1980 (respondent's first contention), and the

same reasoning applies. Petitioner's vested right in the judgment could not be modified and the trial court's finding in relation to the judgment for $1,850 is affirmed.

Respondent's final contention is that the trial court erred in refusing to strike petitioner's reply to respondent's answer in the post-decree proceeding before the trial court. Respondent argues that petitioner's reply violated the requirements of section 33 of the Civil Practice Act that the pleading "contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply." (Ill. Rev. Stat. 1979, ch. 110, par. 33(1).) Respondent points to the inclusion, in the reply, of a synopsis of the significant events in the proceeding and petitioner's financial affidavit. Petitioner argues that the synopsis was included solely to inform the judge handling the post-decree proceeding of the relevant facts of the case. She argues that the financial affidavit was included in support of her claim for attorney fees.

■■ A review of the record fails to convince us that the inclusion of the synopsis and financial affidavit resulted in any prejudice to respondent. In *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770, the appellate court held that allegations constituting mere surplusage in a complaint should be disregarded if the plaintiff has alleged facts sufficient to constitute a cause of action. (36 Ill. App. 3d 638, 652.) The same logic should apply to a reply. The synopsis and affidavit, even if improper, are mere surplusage that absent a showing of prejudice can be disregarded. This logic, together with the rule that pleadings should be liberally construed (Ill. Rev. Stat. 1979, ch. 110, par. 33(3)), leads us to conclude that the trial court's failure to strike petitioner's reply to respondent's answer did not constitute reversible error.

The judgment of the trial court in the post-decree proceedings is affirmed.

Appeal No. 80-1334 is affirmed as modified.
Appeal No. 81-1893 is affirmed.

PERLIN and HARTMAN, JJ., concur.