*In re* MARRIAGE OF MARY R. GLESSNER, Petitioner-Appellant, and THOMAS O. GLESSNER, Respondent-Appellee.

First District (2nd Division)   No. 82—2221

Opinion filed November 8, 1983.

Donald Schultz and Nicholas B. Comerford, both of Chicago, for appellant.

Bianco and Szycowski, of Chicago (Peter Bianco, Jr., of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Petitioner, Mary R. Glessner (Mary), appeals from the supplemental judgment entered by the circuit court of Cook County on August 13, 1982, apportioning the marital property, awarding to her maintenance of $400 per month for one year and designating certain property nonmarital and assigning it to respondent, Thomas O. Glessner (Thomas).

On appeal, Mary contends that because neither party allegedly prayed for partition of the marital home, the trial court erred in ordering its sale. Mary further contends that the trial court erred in failing to consider evidence or make a finding as to the value of Thomas' accounting business; in awarding the accounting business to Mary while awarding to Thomas the accounts receivable or payable of that business; in accepting, as probative of value, Thomas' testimony with respect to the market value of the Hoffman estates condominium in which he resides and in evaluating certain Florida property claimed by Thomas to be nonmarital; in finding that the condominium where Thomas resides and the Florida property were nonmarital; in finding

that certain funds acquired during the marriage, and placed in trust by Thomas for the benefit of three of the parties' children, constituted a gift and that the condominium in which Thomas resides, purchased in part with those trust funds, was nonmarital property, in failing to find that Thomas' act of placing funds in trust was a dissipation of marital assets; in failing to consider or dispose of certain stock; in failing to dispose of the marital property in just proportions; and in limiting to one year the award to Mary of $400 per month as "rehabitated [sic] maintenance."

The parties were married on June 6, 1953. The marriage produced six children, all of whom were, at the time the supplemental judgment was entered on August 12, 1982, emancipated. The parties' two youngest children were on that date, living with Mary in the marital home.

On September 27, 1977, Mary filed a "Complaint for Separate Maintenance, Injunction and Other Equitable Relief." On October 14, 1977, three of the parties' children were not yet emancipated and were living with Mary when she was awarded $750 per month as temporary maintenance and child support. On February 17, 1978, the amount of this award was reduced by the trial court to $400 per month. On February 26, 1980, following an uncontested hearing, a judgment of dissolution was entered dissolving the parties' 24-year marriage and reserving for future determination "all matters concerning the questions of the custody, visitation and support of the minor children of the parties, the maintenance of the petitioner, the respective rights of each party in and to the property *** including a division of all marital and non-marital property, awarding attorney fees and other matters."

The record indicates that a hearing on those "reserved issues" was continued from time to time until August 7, 1981, when, as a result of Mary's failure to act, the case was dismissed for want of prosecution. On December 23, 1981, Thomas filed a petition to vacate the court's dismissal order and requested that the cause be reinstated. The court granted Thomas' petition to vacate the August 7, 1981, dismissal order and reinstated the case.

When trial began on March 31, 1982, Mary, in apparent good health, was 56 years old, a high school graduate. During the first year of the marriage she was employed as a legal secretary. Thereafter she was a homemaker until 1971 when she became employed part-time as a clerk for Sears, Roebuck & Company. At the time of trial, and for the preceding three years, Mary was employed as a secretary in the legal department of Sears, Roebuck & Company. Her net income was

approximately $225 per week ($967.50 per month) and she estimated her expenses were approximately $1,713 per month.[1]

Thomas, an accountant, was, at the time of trial, 58 years old and apparently in poor health. The record indicates that he was taking medication for diabetes, high blood pressure and a heart condition which, in 1976, necessitated open-heart surgery. Thomas was sole proprietor of an accounting and tax service known as Thomas O. Glessner and Associates. Thomas stated that his annual net income approximated $16,000 ($1,333 per month) and his annual expenses were approximately $14,000. His 1981 Federal income tax return indicates gross receipts of $47,230 and an adjusted gross income of $19,099. A profit and loss statement submitted by Thomas indicates that in 1981 he had a "net profit after income taxes" of $16,199.

On April 27, 1982, following three days of testimony, the trial court took the case under advisement and on August 13, 1982, entered its "Supplemental Judgment for Dissolution of Marriage," including the court's written findings and order.

The record indicates that, because the parties by agreement disposed of certain marital assets during the pendency of these proceedings, these assets were excluded from consideration by the court and no finding as to the total value of the marital estate was made. The trial court's written findings, however, included certain evaluations and characterizations of the parties' assets. The court found that "the improved real property constituting the former marital home of the parties *** [had] an appraised value stipulated by the parties to be $86,000 *** and is free and clear of any encumbrances." The court also found: on December 1, 1977 (65 days after Mary's initial complaint was filed), Thomas established two trust accounts at Austin Federal Savings in Schaumburg, each in the amount of $10,000, designating three of the parties' children as beneficiaries and naming his sister, Nancy Weber, and a friend, Walter Klink, as co-trustees of those accounts; that after the parties were divorced in February 1980, Thomas asked the co-trustees to purchase with the trust funds (certificates of deposit), plus interest accrued, a condominium in Hoffman Estates, title to which was again placed in trust for the three children; that the original money used to establish the trust was a gift by Thomas to his children and, therefore, the condominium was nonmarital property; that each party was "approximately equal in his or her income production"; and that on July 25, 1980 Thomas "paid no

---

[1]Thomas has, in his arguments to this court, challenged the validity of certain of these expenses claimed by Mary (i.e., $400 per month food, $200 per month clothing).

money" to his mother or to his sister when they transferred to him their entire interest in certain improved real estate in Florida, and, as a result, that property was nonmarital.

The court awarded to Mary the Thomas O. Glessner & Associates accounting business "by the agreement of the parties at the trial *** less the cash balance on hand and less the accounts payable and accounts receivable of the said business." The court further ordered that the former marital home of the parties should be sold and the proceeds, after payment of costs and expenses of sale, should be divided equally between the parties; that Thomas be awarded "any cash he has on hand and the cash balance that he *** has accumulated for his business"; that Mary be awarded her interest in the Sears savings and profit sharing plan, including all stocks and cash in the said plans[2] and any cash which she has on hand; that each party pay any or all of his or her own debts, liabilities and obligations and his or her own attorney fees and costs; and that Thomas pay to Mary "the sum of $400 per month as and for rehabilitated [sic] maintenance for a period of one year."

Mary appeals from the findings of the circuit court and from the supplemental judgment for dissolution of marriage.

■ Mary initially contends that because neither she nor Thomas prayed for partition of the marital home, the trial court erred in ordering its sale.

Section 514 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1979, ch. 40, par. 514) provides:

> "A court having jurisdiction in an action for dissolution of marriage may, upon petition of one of the parties, hear and decide an action for petition subject to the provisions of 'An Act in relation to the partition of real estate [Ill. Rev. stat. 1979, ch. 106, par. 44 *et seq.*]' *** except as otherwise provided in this Act."

This section apparently authorizes a trial court, as a matter of judicial economy, to consider, where requested, the partition of marital real estate in the course of a dissolution of marriage action. (See Ill. Ann. Stat., pars. 503(c), 514, Historical and Practice Notes at 796-97, (Smith-Hurd 1980).) Thus it has been held that in dividing real estate which is classified as marital property under section 503 of the Act,

---

[2]The record indicates that on December 31, 1981, Mary had accumulated 144+ shares of Sears stock and had net deposits of $848.62 in the Sears Savings and Profit Sharing Fund. She had total gross deposits of $3,848.62 as of that date but subsequently withdrew $3,071.58 "for legal expenses."

the court is empowered to order the sale of co-owned real estate without the need for a separate partition action, provided one of the parties has petitioned for such partition. *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 838, 398 N.E.2d 868.

Thomas contends that he in fact petitioned the trial court here when, in his counterpetition for dissolution filed on February 17, 1978, he prayed for "a reasonable division of marital property and other equitable relief." He argues that this prayer qualified as a petition for partition as set forth in *Pieper.*

In *In re Marriage of Peoples* (1981), 96 Ill. App. 3d 94, 96, 420 N.E.2d 1072, the respondent contended, as Mary does here, that "in the absence of a specific prayer for sale of the marital home, the court is without the authority to order what, in effect, is a partition of the property." The court there concluded that petitioner's prayer for "sole ownership of the marital home and such other relief as was equitable *** was sufficient to place the issue of the disposition of the marital home, *including a possible sale,* before the trial court." (Emphasis added.) 96 Ill. App. 3d 94, 96-97.

■ In the instant case Mary's prayer for use of the marital home and other equitable relief, and Thomas' request for a division of the marital property and other equitable relief was, in our opinion, sufficient to place the issue of the disposition of the marital home, including its sale, before the trial court. The trial court, therefore, did not err in ordering the sale of the marital home with an equal division of the proceeds.[3]

■ Mary next contends that the trial court erred in failing to consider evidence of or to make a finding of the value of Thomas' ac-

[3]Thomas suggests that "division" and "partition" are synonymous and that the legislature, in granting the trial court the power to "divide marital property *** in just proportions *** also inferentially and logically included the power to order the sale of that property in order to implement the power to divide without the cumbersome and expensive process [of partition]."

Recently the Illinois Supreme Court in *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 532-33, 427 N.E.2d 1239, because of its disposition of that case, found it unnecessary to decide whether a trial court in a dissolution proceeding has inherent authority to partition jointly owned marital property. We note that courts of other jurisdictions have construed such statutory language as, "shall divide," as authorizing the trial court hearing a dissolution action "to complete the task with respect to the real estate" by ordering its sale. *Zillert v. Zillert* (Me. 1978), 395 A.2d 1152, 1156-57; *Jekot v. Jekot* (1973), 32 Colo. App. 118, 121, 507 P.2d 473, 475.

Since we have determined, in this instance, that Thomas' prayer for relief has in fact placed the issue of disposition of the marital home before the trial court, we need not further address this issue.

counting business.

It is generally established in Illinois that the Act does not require the court to place a specific value on each marital asset but only that there be competent evidence of value and that the court's division of the property be supported by such evidence. *In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 379, 445 N.E.2d 412.

Our review of the record in the instant case indicates that the court heard Thomas' testimony regarding the income and expenses of his business. Exhibits offered into evidence by Thomas, including his 1980 and 1981 tax returns, detailed the assets, liabilities, gross receipts and expenses of his business.

Although we note the paucity of effort and of evidence to explain a number of Thomas' peculiar financial transactions and unusual bookkeeping methods, it is not the function of a reviewing court to tread beyond the record and to engage in speculation. Our review indicates that the trial court did consider the evidence submitted to it and acted in accordance with such evidence in apportioning the property. Since the business was offered to Mary by Thomas' attorney and apparently accepted by Mary, she made no further attempt to introduce expert testimony of value, and it was unnecessary for the trial court to invite such further testimony.

■ Mary contends that she was prevented by the trial court's actions from "personally" accepting or rejecting the offer of the business. She argues that her acceptance of the business was the result of her attorney's "ill chosen response" and not of her individual action.[4] A close review of the record, however, does not indicate that the trial court in any way interfered with Mary's acceptance or rejection of the offer or that Mary, during trial, expressed disagreement with such acceptance. Under these circumstances, we find no error in the trial court's failure specifically to evaluate the accounting business.

Mary further contends that since she is not an accountant, the action of the trial court in awarding her the accounting business was "illusory." She argues that in awarding to Thomas the accounts receivable and payable of the accounting business and in permitting him to compete for the 12 to 14 active accounts of the business, Thomas retains everything of value in the business.

The evidence indicates that Thomas at times hired subcontractors

---

[4]The response Mary refers to was made after the business was offered to her by Thomas' attorney and the court asked if she had any further witnesses to call. Mary's counsel replied: "If we are going to be awarded the business I don't have any further witnesses, I guess."

to service the accounts, and Mary's counsel acknowledged that "the business has some value and benefit apart from the labor that [Thomas] puts into [it]." During trial Mary did not disagree with the court's handling of the accounting business, and we find no error in this instance.

Mary next contends that except for the testimony of Thomas to which she refers as "without proper foundation," there was no evidence as to the value of the Hoffman Estates condominium in which Thomas resided with a lady friend or of certain Florida property deeded to him by his mother, Goldie Glessner, and his sister, Nancy Weber.

Mary argues that absent a proper foundation, "Thomas' testimony is not probative of value." Mary's argument is, however, not supported by the record which contains many exhibits relied upon by Thomas in his testimony, including deeds and other transfer-of-title documents, which indicate the purchase price of these properties. Thomas' mother, in her depositions and his sister at trial also testified about these properties and their purchase prices. In view of the documentation and the testimony of the witnesses, we do not find that the value of these properties was based solely upon Thomas' testimony or that Thomas' testimony was totally without proper foundation.

■ Mary also contends that the trial court erred in finding that the condominium in which Thomas resided and the Florida property were nonmarital.

The court found that the Hoffman Estates condominium in which Thomas resided was nonmarital property after determining that part of the funds used to purchase the condominium came from the trust established by gift from Thomas to three of the parties' children and the balance of the purchase price of that condominium came from a loan to Thomas from his friend, Joseph Szatkowski. The court concluded that since the original funds placed in trust for the children were a gift, the condominium, also held in trust for the children, remained nonmarital property.

Mary asserts that Thomas' sister, Nancy Weber, "is admittedly not the actual owner" and that she holds only "naked legal title to the condominium." Mary argues that because Nancy Weber pays no expenses of the condominium and collects no rents from Thomas, who pays all the expenses and uses the condominium as his residence, title in her name is "illusory." According to Mary, the transaction whereby Nancy Weber took title to this property was "merely colorable" and "a fraud on the marital rights of Mary."

■ It is well established that "fraud against marital property is

not to be condoned even though it occurs before dissolution." (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 220, 446 N.E.2d 499.) When the characterization of a transfer of marital funds into a trust by a spouse is questioned, "fraud" is properly assessed by referring to the donative intent of the settlor. (94 Ill. 2d 205, 221.) Where a transfer of real property is involved, the transfer can be voided only upon a showing by clear and convincing evidence that the purpose of the transferor was to defraud the marriage. 94 Ill. 2d 205, 221-22.

■ Courts have suggested that the intentions of the transferor should be examined in terms of his intent "either to retain or to part with the ownership of property." (*Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 359, 383 N.E.2d 185, citing Smith, *The Present Status of "Illusory" Trust—The Doctrine on Newman v. Dore Brought Down to Date*, 44 Mich. L. Rev. 151 (1945).) An illusory transfer, which Mary suggests exists in the instant case, "is one which takes back all that it gives" and "a colorable transfer is one which appears absolute on its face but due to some secret or tacit understanding between the transferor and the transferee the transfer is, in fact, not a transfer because the parties intended that ownership be retained by the transferor." *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 359.

The uncontradicted evidence in the record before us indicates that in December 1977 Thomas established two $10,000 "Totten" type trust accounts in the Austin Federal Savings Bank of Schaumburg, Illinois. Thomas' sister, Nancy Weber, and his friend, Walter Klink, were named as trustees of these accounts. There is no indication from the record that Mary was aware of Thomas' intent when he established the trusts nor that she protested Thomas' actions. Although the record does not reflect the scope of the trustees' authority, during oral argument before this court counsel for Mary agreed that under the terms of the trust the trustees did have authority to use the trust funds to purchase a condominium. In 1980, some two years after the trusts were established by Thomas, the trust funds were in fact used, along with an additional $20,000 which Thomas borrowed from Joseph Szatkowski, to purchase a condominium in which Thomas now resides. The title to the condominium was likewise placed in trust from Thomas' children. Nancy Weber's uncontradicted testimony was that she controls the property as trustee for the children and that, in lieu of rent, Thomas pays the expenses of maintaining the property.

■ A review of the evidence indicates that Thomas could not "take back" the property which was placed in trust for his children nor did he retain control, or ownership, of such property. In our opin-

ion, the trial court did not err in finding that the trust funds were in fact a gift to Thomas' children and that the condominium was, therefore, nonmarital property.

█ Mary also contends that it was error for the trial court not to have concluded that Thomas' use of the $20,000 to establish the trust funds was a dissipation of a marital asset.

It has been held that "[d]issipation may be found where the spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time at which the marriage is undergoing an irreconcilable breakdown." *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462, 426 N.E.2d 1087.

Mary urges that in establishing the trusts and then converting them into the condominium, Thomas disposed of a large part of the marital assets while he retained the use, benefit and control of those assets. Mary, however, offered no substantive evidence at trial to mandate a change in our conclusion that Thomas did not retain the use of or control over the funds which were placed in trust for the children. Although Thomas resided in the condominium, he did, in lieu of rent, pay the expenses of maintaining that property for the ultimate benefit of the children who were the beneficiaries of the trust. Nancy Weber testified without contradiction that, as trustee, she alone controlled the property. The trial court's finding that Thomas had not, in this instance, dissipated marital assets was, therefore, not error.

█ Mary further contends that the trial court erred in finding certain Florida property to be nonmarital property. She argues that the presence of a 40-cent Florida transfer tax stamp on the deed to the property, along with the fact that Thomas from time to time paid to his mother $200 to $300 when the family occupied her home during vacations, demonstrates that Thomas purchased the property and refutes Thomas' contention that the property was acquired by gift.

Thomas' mother, Goldie Glessner, testified in her deposition that she purchased the Florida property in 1963 with the proceeds received by her from the sale of her house in McHenry, Illinois. On March 18, 1974, she transferred her interest in the Florida property by quit-claim deed to herself, her daughter, Nancy Weber, and to Thomas as joint tenants. In 1980, after the judgment of dissolution was entered in the instant case, the property was transferred by Mrs. Glessner and Nancy Weber to Thomas alone for a nominal consideration of $10. The warranty deed transferring sole ownership of the property to Thomas carries a 40-cent State of Florida documentary tax stamp to comply with the Florida statute (Fla. Stat. 1979, ch. 201,

par. 201.02), which requires such a stamp on all Florida real estate title transfers.

The presence of the 40-cent tax stamp in this case, together with the evidence that nominal amounts of money were given by Thomas to his mother during family visits, is in our view, insufficient to refute the testimony of both donors and donee that the property was in fact a gift to Thomas. Because it is well established that property received by gift by a spouse during the marriage is nonmarital property (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(1)), the trial court in this instance did not err in finding that the Florida property was nonmarital.

■■ Finally, Mary contends that the trial court erred in limiting to one year the award to her of $400 per month as rehabilitative maintenance.

It has long been established in Illinois that the award of maintenance is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless it amounts to an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 507, 436 N.E.2d 228.) Such an abuse of discretion generally occurs only where no reasonable man would take the view adopted by the trial court. (106 Ill. App. 3d 502, 507.) Maintenance awards for a limited period, such as in this case, have been upheld by Illinois courts in cases where the award was intended to maintain a party for a limited period during which such party's income-producing potential might be fully realized. *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 566, 425 N.E.2d 1146.

Mary argues that the award, limited to one year, is speculative and not based upon the evidence. The record, however, indicates that both parties are in their fifties and at the time of trial were producing approximately the same amount of income. From the record it would appear that Thomas was in poor health. His accounting business was awarded to Mary. Although Thomas disputes the amount of certain monthly expenses claimed by Mary, he does not contest the propriety of the maintenance order.

Under the circumstances of this case, we do not believe that it was unreasonable for the trial court to limit to one year the maintenance award to Mary.

In what appears to be a blunderbuss approach, Mary faults each of the trial court's findings and orders. She has not, however, presented sufficient substantive evidence or pertinent argument to warrant a reversal by this court. In the points and authorities section of her initial brief filed with this court, she assigns as error the trial

court's failure to dispose of certain stock and, generally, to divide the marital assets in just proportions. Since she has failed to argue these issues in such brief, we deem these issues to be waived. 87 Ill. 2d R. 341(e)(7).

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

DOWNING, P.J., and STAMOS, J., concur.