SARAH GASS AND OTHERS v. HAWKINS AND WIFE.

TITLE BOND. *Equitable Estate. Life Estate. Descent. Devise. Right of Dower.*

1. A father executed to his son a bond in the penalty of $5,000, in which he agreed to convey to the son or to the son's children, as the father might elect, certain real estate, in fee simple, with covenants of general warranty. If the father should elect to make the deed to the son's children, then the son should have a life estate in the premises. If the father should die without making the deed to the son or his heirs, then his personal representatives were required to make it to the son. These stipulations, were subject to a life estate in the premises, which the father reserved to himself. The son entered into possession of the premises, and then died before the father had executed the deed either to him or his children. The father surviving the son, instead of conveying the premises to the son's children by deed, demised it to the son's "family" by will. *Held,*

   i. That the son took an equitable estate in fee simple in the premises, subject to the father's life estate, and subject also to the right of the father to terminate it and leave the son only to life estate by executing a conveyance to his children according to the terms of the bond.

   ii. That upon the death of the son, his equitable estate passed by descent to his children, his heirs at law.

   iii. That the demise to the son's "family" must be held a saisfaction of the bond, and that it united in the son's heirs the legal estate in the premises with the equitable estate which had descended to them ; the word "family" in th ewill not including the widow so as to entitle her todower.

Sarah Gass and Others v. Hawkins and Wife.

IV. That such could not be the effect of the will, since the equitable title having vested in the son's heirs, the grandfather can do nothing to impair it.

V. That the son's widow can have no right of dower in the premises for the further reason that the father's life estate was subsisting at the time of the son's death.

## TITLE BOND. *Sale.*

2. A title bond is *prima facie* evidence of a *sale*, and it devolves upon him who controverts it to rebut the presumption by proof.

## THE SAME. *Consideration, Presumption of.*

3. A court will not presume from the absence of a price stated in a title bond, that there was none, but the contrary.

## THE SAME. *Statute of Frauds.*

4. The presumption in favor of consideration in an instrument like this, remains as it existed at common law before the statute of frauds.

## HE SAME. *Circumstances which support the Presumption of Consideration.*

5.  I. That the writing is under seal.

II. That there is no intimation on its face of a gift.

III. That there is a penalty annexed on failure to convey.

IV. That there is a stipulation to convey with *covenants of warranty*.

V. That the obligor after the death of the obligee acknowledged the bond and had it registered.

VI. That after the execution of the bond, neither the obligor nor his heirs ever asserted any claim to the land stipulated to be conveyed.

## RES JUDICATA. *County Court, Chancery Court, Concurrent Jurisdiction in Partition.*

6. The County, Circuit, and Chancery Courts exercise concurrent jurisdiction in proceedings for the partition of estates; and when one court takes jurisdiction in such a proceeding, its jurisdiction is final and conclusive upon the others. The County Court having made decree for partition, it cannot be reviewed in the Chancery Court, nor can that Court again adjudicate upon the same subject matter.

PARTITION. *Disputed Title.—Uncertainty of shares, when adjudicated in equity, and when sent to law.*

7. It seems that when there is a dispute about title, applicants in chancery for a partition will be sent to law to settle the same in ejectment, but if there is merely an uncertainty of shares, the respective portions of the parties will be ascertained by reference to a master, and the Court will direct the commissioners accordingly, dismissing from the case such as appear not to be entitled to any share.

THE SAME. *Contest about equitable title.*

8. So if there be a contest about an equitable title, as an unassigned dower, this will be decided in equity; since it cannot be sent to law. And upon a *proceeding for partition,* a party having such an equitable right, and being in court, and not assisting it, can not afterwards do so.

WRIGHT J., delivered the opinion of the Court:

This bill is filed by Sarah Gass the widow of Hezekiah B. Gass deceased and his six children, against Mary Ann Hawkins, his remaining child, and her husband Henry M. Hawkins; in which complainant seek to have the dower of said Sarah assigned to her out of a certain tract of land in Greene County, and partition of the residue, alleging that said tract decended from the said Hezekiah B. on the 9th of February 1833.

John Gass the father of the said Hezekiah B. executed to him a bond in the penalty of $5.000 dollars conditioned that he would make to the said Hezekiah B., or to all of his children, as the said John might elect, a deed in fee simple with covenants of general warranty to a certain tract of land describing the same by metes and bounds, of which the above tract is a part; excepting however from the conveyance all the land contained within the boundaries which he had previously conveyed to others, and also fifty acres below said Johns grist mill, as the said John might choose to have the same run out and surveyed.

In the said bond it was stipulated that if the said John executed said deed in his life-time to the children of the said Hezekiah B. then the said Hezekiah B. was to have a life estate in said land: and if the said John should die without making the deed, either to the said Hezekiah B. or his heirs, then the personal representatives of the said John were required to execute the deed to the said Hezekiah B., and said John reserved to himself a life estate in the premises to be conveyed, with the exception of a saw mill which the said Hezekiah B. was about to erect, and timber to saw in said mill; the said Hezekiah to do whatever sawing the said John might want, he to furnish the logs, and also excepting the houses and buildings which the said Hezekiah had put upon the place, and the field which he then had in possession and cultivation, and fire-wood for his own use, and timber to keep up the place. The said Hezekiah B. with his family immediately took possession of the tract of land, made improvements and continued to reside thereon until his death in 1836, and his widow and heirs have had possession of the same ever since. They claimed it absolutely as their own and were never disturbed or any claim made to it either by the said John Gass or his other heirs. In 1836, but whether before or after the death of the said Hezekiah B. does not appear, the said John went before the Clerk of the County Court of Greene County and acknowledge said Bond and the same was registered. In June, 1840, the said John Gass without having executed the deed in compliance with the court, died leaving a will bearing date the 1st of March 1837, in which he devised said tract of land to his son Hezekiah B. Gass' "family" describing the same as 300 acres, the place whereon he died. And in a bill in equity subsequently filed by the executors of the said John Gass against those interested in

16—TENN.—REP.

his estate for a construction of the will and the execution
of the trusts therein contained, it was alleged and not
denied, that the devise of three hundred acres of land to
Hezekiah B. Gass was made in pursuance of the title bond
under which he and those claiming under him had such
length of possession as that the absolute title was vested;
and they therefore asked to be exhonorated from any fur-
ther trouble in regard to said land, and never did claim it,
or further intermeddle with it. What quantity of land was
contained in the bond does not appear, nor how much John
Gass had conveyed to others before its execution; but it
seems from the bill that after he made the bond he con-
veyed to one Samples 50 acres of land therein embraced
which is now, and has been for many years, in possession of
one William C. Babb as to whom complainants have dis-
missed their bill conceding that they have no valid claim on
that part of the tract. We are of course unable from any-
thing in this record to state the quantity of land that
remains to the heirs of Hezekiah B. Gass after making the
deductions above mentioned.

Upon these facts we are of opinion first, that this cannot
be regarded as a *voluntary* bond between John Gass and
his son Hezekiah B. but on the contrary an instrument
founded upon a valuable consideration, the legal effect of
which *in equity*, was to invest the said Hezekiah B. in his
life-time with a title in fee simple to said land, subject to be
divested by a deed from John Gass to the children of Hez-
ekiah B., but which was never made; and also subject to
the life estate of said John, which closed at his death; and
that therefore, upon the death of Hezekiah B. the tract of
land came by descent to his children and heirs at law. The
bill so alleges and such we think the legal effect of the
bond. In arriving at this conclusion we do not deem it

necessary to consider what effect the engagement of said Hezekiah B. to said John to saw his lumber, contained in said bond might have in relieving it of its supposed voluntary character. Nor do we go into the question whether even if the bond were clearly wanting in any valuable consideration, a court of equity might not have executed it by decreeing a conveyance upon the nature of meretorious consideration, it being between father and child. Burn et al. vs. Wenthrop et al., 1 Johns. Ch. Rep. 329, 327. Montener vs. Seymour, 4 Do., 497, 500.

As before stated we think aside from these views it must be held to have invested Hezekiah B. Gass with the equitable title in the land according to the authority of the case of Whitley et als., 4 Sneed, 473. This bond is not to be taken as a *gift* but as a contract for the conveyance of land valid under the statute of frauds, even though no price be named or recited; and we are not to presume from the absence of the price in the bond that none existed, but just the contrary. The title bond is *prima facie* evidence of a *sale* and it devolves upon him who controverts it to rebut the presumption by proof. In this case there is not the slightest evidence to show that this bond was a gratuity or that it was not founded in a *valuable consideration*, and no such thing is averred in the pleadings. I speak of a consideration other than such as appears upon the face of the bond. A consideration is just as necessary now, as before the statutes of frauds, but it need not be stated in the writing or title bond; its existence may be shown by parol or other common law proof, and all the presumptions in favor of its existence which at the common law arose out of an instrument like this, are still obligatory upon us as a court. It was necessary that a bond like this should have been signed by Hezekiah B. Gass in order to bind him as to his

part of his contract, he being bound for the price whatever it was upon common law principles independent of the statute. It was sufficient that it was signed by John Gass who was to be charged *therewith*, and that it contained an apt description of the land to be conveyed by him, with the terms upon which the conveyance was to be made. 4 Sneed, 473, 1 Dev. & Batt. law, 103. A sufficient consideration is to be presumed not only from the fact that the writing is under seal, there being no intimation upon its face of a gift. But this is very materially aided by the penalty annexed on failure to convey, and by the covenants for warranty, and indeed by the terms of the entire instrument, the true construction of which much more naturally imports a *sale* than a *gift*. The presumption is not affected by the relation of father and son nor by the power retained in John Gass to convey to the children of Hezekiah B. This does not prove that some valuable consideration did not pass from the said Hezekiah B. or his children to the said John. Hawood's Heirs vs. Moore, 2 Humph. 584. The proof *aliunde*, that he acknowledged the bond and caused it to be registered ; that neither he nor his heirs ever claimed the land, together with the want of any averment or testimony that it was intended as a gift, support also the presumption of a sale.

Second. The demise in the will must hold a satisfaction of the bond, (1) and the legal title united with the equit-

(1) This seems to be a case of performance, and should be distinguished from cases of satisfaction. The difference between these two classes of cases is stated by Mr. Justice Story as follows: "In the latter cases, (cases of performance,) the acts of the party are strictly in pursuance of the contract ; in the former, (cases of satisfaction,) they are a *substitute or equivalent* for the contract. 2 Story Eq. Jur. § 1106.

able estate, to be in the heirs at law of Hezekiah B. Gass. Even if the word "family" (2) as used in the will could ordinarily embrace the widow, it cannot be allowed to be so here ; because by force of the bond the title to this land was in Hezekiah B. Gass at his death and descended to his heirs and the will of John Gass could not alter or impair their title. Its only effect was to pass to them the legal estate and we will not suppose that any thing else was intended. Though John Gass in his lifetime might have exercised the power in favor of the children of Hezekiah B. by the execution of the deed to them, thereby defeating the estate of Hezekiah B. he could neither by deed nor by will bring in the widow. The execution of the deed must have been either to Hezekiah B. or his children, and could be to no one else. This result is not changed by the recital in the will that John Gass paid Hezekiah B. Gass' administrator for the sawing done for him by the said Hezekiah B. He was not bound to do so, even if Hezekiah B. meant he should. But there is no evidence that he so intended. And besides, how could any thing that might take place between John Gass and the *administrator* of Hezekiah B. affects the *rights of the heirs of the latter in this land.* It certainly could not; and it is plain from this will itself that John Gass did not intend any such thing.

And see Goldsmid v. Goldsmid, Swanst. 219—221 ; Devese v. Pontel, Ch. Prac. 240, note; S. C., 1 Cox, 188; Blandy v. Widmore, 1 P. Wms. 324, and Mr. Cox's note (1) ; S. C. 2 Vern. 209; S. C. Leading Cases in Eq. by White and Tudor, Vol. 2, pt.1 page, 464 ; Wilcox v. Wilcox, Ib. p. 463; S. C. 2 Vern. 558. And see Roper on Legacies by White, Vol. 2 ch. 18, § 4, p. 105—108.

(2 ) Construction of the word "family, "2 Story Eq. Jur. §§ 1065 b. 1071; Jarman on Wills, p. 24, *et seq* ; 2 Wms. Ex. 964.

Third. The widow of Hezekiah B. Gass took no dower in this land (unless it be the portion excepted in favor of her husband,) because the life estate of John Gass was subsisting when her husband died, and he had only a remainder, 1 Head 348. But as six of the heirs who unite with her as complainants in the bill concede her right to dower and ask that it may be allotted to her, she may have a decree for six-sevenths. As to the other one-seventh the defendants deny her right.

Fourth. We think the decree of partition had on the County Court of Greene County under which the defendant Mary Ann Hawkins obtained her share or one-seventh conclusive upon the parties; and that a Court of Chancery cannot revise its proceedings or correct errors if any there be, in the decree, and the complainants certainly cannot, as is attempted here, by a new and distinct suit pass by the proceedings of that court altogether, and ask for a repartition. The code under which this proceeding was had and by which it was authorized, confers concurrent jurisdiction of partition cases upon the County, Circuit and Chancery Courts, and the action of the Court first taking jurisdiction, must as to the other tribunals of the same or concurrent power, be final. Code sec. 3266. (3) When a

(3) Wilcox v. Cannon, 1 Cold. 369; Bledsoe v. Wyley, 7 Humph. 507, 508; Mathews v. Weeden, 4 Yerg. 166, 167. As to presumptions in favor of the jurisdiction of the County Court, see Cate v. Little, *supra*, p. 63, note. (1) Upon a sale for partition, the County Court has the same power as the Circuit and Chancery Courts to enforce the collection of the purchase money by judgment in a summary way against the purchaser. Still v. Boon, 5 Sneed, 380; Porter v. Woodard, 4 Cold. 590, 599. But as its equitable jurisdiction is limited and purely statutory, it cannot set aside a sale for partition on the ground of fraud after such sale has been confirmed. If any matters of equity exist or should arise subsequent to the sale, whereby the sale ought to be avoided, resort must be had to the Court of Chancery. Young v. Shumate

court of law and a court of Equity have concurrent juris-
diction of the matter in dispute, the court which first
takes jurisdiction settles the matter conclusively. Thomp-
son vs. Hill, 3 Yerg. 167. Flournoy's Ever's vs. Holcomb,
2 Humph. 34. The complainants, including complainant
Sarah, were parties by actual service, and we see no irregu-
larity affecting the authority of the County Court. No
fraud in the decree is alleged or pretended, and indeed no
irregularity, the division being in precise conformity to the
rights of the parties, save that it is insisted that complain-
ant Sarah did not get her share. But we have seen that
under the will she took nothing, and by *law* has no right
to dower unless it be in that portion of the land in which
John Gass did not reserve a life estate, and as to that the
decree of the County Court ends the matter. The remedy,
if any, being by appeal or writ of error to a revising
Court, and not by an original suit in a tribunal of concur-
rent authority. The cases of Nickley vs. Boyles (4
Humph. 177) and Whellock vs. Hale's heirs (10 Do. 64)
to which we have been referred cannot help complainants.
The doctrine of these cases is that a bill for partition is
not a bill to settle title, but a bill to divide that which
belongs to tenants in common among them in severalty; and
if the title be disputed, partition will not be made till the
dispute is settled in ejectment or other appropriate form of

3 Sneed, 369; Bond v. Clay, 2 Head, 379; Young v. Thompson, 2
Cold, 596. Sections 4204 and 4205 of the Code, are merely declaratory
of the previously existing law, and do not enlarge the jurisdiction of
the County Court in this respect. Bond v. Clay; Young v. Thompson,
*ub. sup.*; Partee v. Woodard; 4 Cold. 598. And in this last case it
was held that the County Court, having sold land for partition, cannot
issue a writ of possession, to put the purchaser in posession. Shackle-
ford, J., dissenting.

action *at law* ; and hence that in an action of ejectment a partition by decree, was not conclusive upon the rights of the parties *as to the title.* (4)    But this doctrine can have

(4) In Traynor v. Brooks, 4 Hayw. 295, there was a bill for partition in the Circuit Court, to which one of the defendants demurred, claiming the whole tract. The judgment of the Circuit Court dismissing the bill was affirmed. Said the Court: Brooks is in the possession and claims the whole tract under the conveyance from the complainants' brother. The complainant has not recovered possession in ejectment; and the defendant, Brooks, denies his title. We cannot try that legal question on this bill for partition. Partition cannot be decreed until the complainants' title be established at law, and then, it is, of course, for a Couut of Equity to decree it."

And so in Butler v. King, 2 Yerg. 115, 122, the Supreme Court dismissed a petition for partition on like grounds, and said: "The title to all the lands to be divided must be settled by legal adjudication, or other competent means, before a division can be made. The title should be settled by a court of law, with the aid of a jury and their verdict, before a partition can be ordered. For if this latter precede the adjustment of title, and this be afterwards tried, and found against the petitioner, then either the whole division will stand for nothing, or a decision without a jury on a petition for a division will be conclusive ; *and this would be in direct opposition to the constitution, and to all experience and practise hitherto known, and in direct opposition to 4 Hayw. 295.*"

Again the Supreme Court said in Burton v. Rutland, 3 Humph. 435, 436. "In a case for partition in Chancery the title must be clear or dispute. And in Hickman v. Cooke, 3 Humph. 640, 642, the same Court again said: "That a Court of Equity cannot try a mere simple legal title to land, is too well settled to admit of argument. Such a power is exercised only in difficult and complicated cases affording peculiar grounds of equitable interference ; " and citing in support of this dictum, 2 Johns. Ch. R. 519 ; 4 Randolph Va. R. 74; 1 Tac. & Walk. 484.

Nicely v. Boyles, 4 Humph. 177, was an action of ejectment, in which it was shown by way of defence that the title had been *adjudicated* in the Chancery Court of Tazewell upon a bill for partition,

no application where the question arises upon an equitable title, such as an unassigned dower-right which must be decided in equity and cannot be sent *to law*. Coze vs. Smith, 4 Johns. Ch. R. 271.(5)

when the defendant, being made a party, claimed title to the whole tract which the Chancery Court overruled. The Supreme Court held that this was not an adjudication of the defendants' title, and said that to hold the contrary would be "to deprive him of an assented right *without a hearing.*" Similar language was used in the subsequent case of Whellock v. Halls' heirs, 10 Humph. 64, 65; and it was there held, upon the ground of the entire want ot jurisdiction in the Chancery Court to settle conflicting titles in a proceeding for partition, that a party claiming the whole tract, and having notice of the intended partition, need not appear in the Chancery Court and set up his title; and failing to do so, he is not thereby estopped from setting it up in a subsequent action of ejectment.

So in Groves v. Groves, 3 Sneed, 188, there was a bill for partition, and the defendants answered, claiming title to the whole of the land. It was held that the bill was properly dismissed; and the doctrine that a bill for partition will not lie, except where the title is clear of dispute, was asserted by Caruthers, J., in strong terms.

Though the weight of authority in other States may, as the learned Judge intimates, support the contrary doctrine; yet it may be collected from the forgoing cases as the doctrine of the Supreme Court of Tennessee that a decree for partition is in no sense an adjudication of the *legal* title of the parties; and though a defendant to such a proceeding demures, setting up his claim to the whole tract, the Chancery Court will send the parties to law; yet if he fails to do so, and allows the partition to proceed, he is not thereby estopped from afterwards asserting his title in ejectment.

(5) And even when the object is to be partition, but the titles are equitable, or there are equities to settle, a Court of equity may be resorted to for this purpose; and having done so, will decree partition under the same bill. Caruthers, J., in Carter v. Taylor, 3 Head, 30, 35, citing 1 Story Eq. Jur. § 650 *et seq.* And see Rankin v. Black, 1 Head, 650. Thus a locutor's interest, being merely equitable, must be

In a proceeding to divide the real estate of an intestate among the heirs, in whatever court it may be had, every person entitled to dower, if the same has not been allotted, is required by the Code (sec. 3271) to be made a party and a dower set apart by commissioners as in other cases, (sec. 3289.) And when complainant Sarah was brought into the County Court as a defendant upon the partition or bill of defendants for a partition, the court could recognize and protect her right to dower upon the partition and it was her duty there to have asserted it, (4 Johns. Ch. Rep. 276) and if the same were not allowed or allotted to her in the decision, by which Hawkins and wife got more than their share, her remedy cannot be by a new and distinct bill.

The Code, Section 3291, provides that partition made as therein directed shall be conclusive on all parties named in the proceedings who have at the time any interest in the premises divided, as owners in fee, or as tenants for years, or as entitled to the reversion, remander or inheritance of such premises after the termination of any particular estate therein ; or who by any contingency in any will, conveyance, or otherwise, may be, or may become, entitled to any beneficial interest in the premises, or who shall have any interest in any individual share of the premises, as tenants for years, for life or by the courtesy or in dower, and on all persons interested in the premises who shall have any interest in any undivided share of the premises who are unknown

reduced to a legal title by the aid of the Chancery Court, before a partition can be had. For there can be no partition unless the legal title is before the Court. Hopkins v. Joel, 4 Humph. 46, 48; Miller v, Wormington, 1 Jac. and Walk. 473. And see Cartwright v. Pultney, 2 Ark. 380.

and to whom notice has been given by publication as therein directed; and upon the privies of the parties above enumerated. But by section 3292 it is provided that such judgment and partition will not affect any tenants, or persons having claims, as tenants, in dower, by the courtesy, or for life, *to the whole* of the premises, nor preclude any person except those specified in the last section from claiming any title to the premises or from controverting the title or interest of the parties between whom the partition has been made. How far it was intended by these two sections and the other provisions of the Code upon the subject to change the rule in Nicely vs. Boyles and Wheelock vs. Hale's Heirs as to the non-conclusive nature of a decree of partition upon the title of the parties thereto, it may not be very easy to state, and we do not attempt it here. It is enough that we think the complainant Sarah, standing as she did in the case, is concluded by the decree of the County Court.

We may remark however that it seems to have been well settled that in a Court of Chancery the uncertainty of the shares is not a ground for definately refusing a partition, but that the interest of the parties might be ascertained by the Court through the medium of the Master, and if it appeared that the parties complainant and defendant respectively, or some of them were entitled to the whole subject, then to order a partition according to the rights of all or such of them as appeared entitled, dismissing from the case such as appeared to have no right; and after the Court had thus ascertained the proportions and rights of the parties, it was the duty of the commissioners to make the division in those ascertained proportions. Agor vs. Fairfax, 17 Ves.

531. (6) It was not every case where the title was litigated even upon the legal title, that was to be sent to law; but only cases of doubt and difficulty, as to the extent of the undivided interest of the respective claimants; 3 Johns. Ch. R. 302, 305; 1 Do. 111, 118. And the authorities generally lay down the rule that the judgment or decree in partition establishes a title which in an ejectment suit must be conclusive. Mills vs. Wetherington, 2 Div. and Batt. Law R. 433. Clapp vs. Bormyham, 9 Cowan, 530, 598.

The allotment to defendants will stand and partition will be made among complainants of the residue,, first allowing the widow sixth-sevenths of her dower.

The decree of the Chancellor will be reversed and the decree entered in conformity to this Opinion.

(6) As where one of the tenants in common has expended money in making improvements upon the premises, or has received more than his share of the rents and profits, or has sold and converted a part of the property to his own use. In such cases, equity will so decree as to establish equality among the claimants. Coleman v. Pinkard, 2 Humph. 185; Fown v. Needham, 3 Paige, 546, 555. Paige J., in Greene v. Putnam, 1 Barb. 509; Haywood v. Judson, 4 Barb. 229; Teal v. Woodworth, 3 Paige, 470; Swan v. Swan, 8 Price, 518.