THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FLOYD PATTERSON, Defendant-Appellant.

First District (5th Division)   No. 85—2412

Opinion filed November 6, 1987.

Paul P. Beibel, Acting Public Defender, of Chicago (R. H. R. Silvertrust, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan Disis, and Cary Davis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with the offense of delivery of a controlled substance. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.) Following a jury trial he was found guilty and sentenced to eight years in the Department of Corrections.

Defendant appeals urging the following. First, the entire venire did not fully understand defendant's presumption of innocence. Second, the trial judge's communication with the jury outside of defendant's presence and his failure to reinstruct the jury on the question of whether defendant had the opportunity to testify in his own behalf was reversible error. Third, the court's failure to insure that a sick juror received his medicine constituted coercion to reach a verdict and was reversible error. Fourth, the signing of the verdict by a person who was not a member of the jury was an irregularity of such magnitude as to grievously taint the entire judicial proceeding to which the defendant was subjected and mandates a reversal of his conviction.

We affirm.

The following facts are pertinent to our disposition. In exchange for $100 defendant gave a police officer four clear plastic bags containing a white powder substance. Defendant was then placed under arrest. The plastic bags were subsequently found to contain .95 grams of cocaine.

At the beginning of the *voir dire* proceedings, the trial judge addressed the entire venire by stating that he was going to explain some "basic principles of law" which are applied in criminal cases. He explained that a defendant is presumed innocent throughout trial, that the State has the burden of proving the defendant guilty beyond a reasonable doubt, and that a defendant is not required to testify. The entire venire was then advised that each juror has an absolute duty to follow the law and must agree and swear to follow the law. He concluded by reiterating that the State bears the burden of proof

and that he assumed the jurors had no quarrel with the law. Additionally, the trial judge questioned veniremen individually and inquired whether each could be fair in light of the law as explained. Also, after the close of the evidence, the jury was instructed on the presumption of innocence pursuant to IPI Criminal No. 2.03 (Illinois Pattern Jury Instructions, Criminal, No. 2.03 (2d ed. 1985).

After closing arguments, the jury was sent back to deliberate. Approximately two hours later, at 6:50 p.m., the jury sent two questions to the judge. They asked: "Can you confirm for us that [defendant] had an opportunity to take the stand and speak on his own behalf?" They also inquired as to whether they could call their families. Outside of the presence of defendant and his counsel, the trial judge responded to these questions. He instructed the deputies to advise the jury to continue their deliberations and to make arrangements to contact their families. In open court, at 8:30 p.m., the judge informed all parties of the questions and his response. Additionally, at that time the trial judge had been advised that one of the jurors had high blood pressure and had not taken his medication. The judge replied:

"Well, that is not the problem. We can get their medication. I propose to bring the jury out at this time and advise them that we will make arrangements for their overnight stay and anybody who needs medication, we will get that. Now if anybody has any objection to that they can make their objections known now or any motions. State?"

The State replied that they had no objections. The defense counsel, while not objecting, did suggest "for the record" that the court inquire as to the jurors' wishes. The judge restated his intention to sequester the jury for the night and informed defense counsel that arrangements would be made with the sheriff to see that the sick juror received his medicine. At approximately 10 p.m. the jury was sequestered until 10 a.m. the following morning.

At 10:45 a.m. the jury returned a verdict of guilty of the offense of delivery of a controlled substance. The jury was then polled.

On July 31, 1985, the trial judge heard defendant's motion for a new trial. Defendant alleged, *inter alia*, that jury deliberations were tainted because the juror who had high blood pressure never did receive medication. Defendant did not introduce any evidence with regard to his motion. Defendant's attorney stated that on July 10, a juror had told him that the juror who had requested the medication did not receive it. The trial judge denied the motion for a new trial, stating that it would be improper to vacate a jury decision based upon speculation and that the jurors had been polled after they reached

their verdict and had the opportunity to voice any concerns they had or problems they experienced.

OPINION

Initially, defendant contends that the entire venire did not fully appreciate his presumption of innocence because the trial judge failed to inquire as to whether they, in fact, agreed with the premise that the State has the burden of proof. The failure to ask this question, defendant contends, necessarily deprived him of a fair trial.

■■ We do not agree. The trial judge fully explained to the venire the presumption of innocence. Prior to trial the trial judge addressed the entire venire and explained the law that a defendant is presumed innocent throughout trial, that the State has the burden of proof and that a defendant is not required to testify. The judge further advised the venire that a juror has an absolute duty to follow the law and that to be a proper juror, a juror must agree and swear to follow the law. Additionally, the veniremen were then questioned individually and asked whether they could be fair in light of the law as explained. After the close of the evidence, the jury was again instructed on the presumption of innocence pursuant to IPI Criminal No. 2.03. Clearly, the trial judge effectively insured that the jurors knew and agreed that the defendant is presumed innocent.

Defendant next contends that the trial judge's communication with the jury outside his presence was reversible error. However, defendant did not object at trial upon learning of the trial judge's communication with the jury. Defendant was informed of the trial judge's responses to the jury's questions yet he failed to object to the substance of the answers or to the communication itself. Similarly, defendant failed to raise this objection in his post-trial motion. Accordingly, we believe any error involving the jury's question concerning defendant's failure to testify and any error in answering the question outside the presence of defendant is waived. See *People v. Humphrey* (1980), 89 Ill. App. 3d 673, 411 N.E.2d 1228.

The next contention of defendant is that he was denied a fair trial because the trial judge failed to insure that one juror received his requested medication. Defendant suggests that this situation may have coerced this juror to reach a guilty verdict. In searching the record, we find no support for defendant's contention.

The record indicates that at approximately 8:30 p.m., while jury deliberations were in progress, the trial judge stated that he had received word that one of the jurors had high blood pressure and felt ill. The deputy sheriff then informed the court, in the presence of the

State and defendant's attorney, that he had spoken to the jurors and learned that one juror was on an antibiotic and a second juror was taking blood pressure medication. The second juror stated that he had not taken his scheduled dosage at 5 p.m. The court responded, "I propose to bring the jury out at this time and advise them that we will make arrangements for their overnight stay and anybody who needs medication, we will get that." The court then advised the jury in open court that they would be moved to another facility and that they should make arrangements for overnight accommodations. They were instructed to continue deliberations. At approximately 10 p.m. the jury was sequestered until the following morning. At 10:45 a.m. the next morning, the jury returned a verdict of guilty of delivery of a controlled substance.

■ In defendant's motion for a new trial he stated that the second juror did not receive his blood pressure medicine. He presented no evidentiary support for that proposition other than stating, "it was disclosed that the ailing juror never was given his blood pressure medicine." His motion was accordingly denied. Similarly, on appeal he presents no evidentiary support for the proposition that the medication was not received by the juror. It is not the function of a reviewing court to search beyond the record and to engage in speculation. (*In re Marriage of Glessner* (1983), 119 Ill. App. 3d 306, 456 N.E.2d 311.) We will not interfere with the trial court's verdict in the absence of affirmative evidence in support of defendant's contention.

The final contention of defendant is that the integrity of his trial was jeopardized when a person who had been excused from the jury signed the guilty verdict. The record indicates that the prospective juror, John Conboy, was acceptable to the defendant, but had been excused by the State. During *voir dire* Conboy stated, among other things, that he could be fair to both sides and he had no bias because of the nature of the charge. The defense accepted this panel, including Conboy, after all members had been questioned. However, the State used one of its peremptory challenges to exclude Conboy. Nevertheless, Conboy's signature appeared on the verdict.

Defendant never objected to the composition of the jury at any time during trial or jury deliberations. He never objected to Conboy's presence at the return of the verdict. Because of the absence of the transcript concerning the polling of the jurors, there is no indication of objection during the polling of the jury and when Conboy was individually questioned. Indeed there is no indication of whether Conboy was one of those responding. Defendant failed to raise this matter in his motion for a new trial. Furthermore, to this point, defendant has

failed to support his contention, that Conboy did not sit on the jury, by affidavit or otherwise. As we have previously stated, we will not pursue matters beyond the record and engage in speculation. See *In re Marriage of Glessner* (1983), 119 Ill. App. 3d 306, 456 N.E.2d 311.

Defendant cites *City of Chicago v. Gilbert* (1948), 335 Ill. App. 567, 82 N.E.2d 74 (abstract of opinion), in support of his contention that the trial court committed reversible error in allowing Conboy to sign the verdict. The one-page abstract opinion of *Gilbert* is distinguishable because there appellant apparently raised a similar discrepancy in her motion for a new trial. Here, the matter is raised for the first time on appeal. We are confined to the record, which indicates that while Conboy may have been excused by the State, he did sit on the jury during trial. To raise the matter on appeal would compel this court to speculate on matters not apparent in the record. We are therefore unwilling to entertain defendant's contention because we find it has been waived.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P.J., and MURRAY, J., concur.