2021 IL App (1st) 181134-U
Order filed: March 26, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-18-1134

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. TH 163916 |
| | ) | |
| ROY CROMWELL, | ) | Honorable |
| | ) | Edward J. King, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for driving under the influence over his contentions that the trial court committed plain error during jury selection.

¶ 2    Following a jury trial, defendant, Roy Cromwell, was found guilty of driving under the influence (625 ILCS 5/11-501(a)(2) (West 2012)) and sentenced to one year of conditional discharge. Defendant appeals, arguing that the trial court committed plain error when it improperly (i) admonished the jurors under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and (ii) allowed an alternate juror to deliberate in place of a seated juror. We affirm.[1]

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 3 On the morning of August 17, 2014, defendant was found slumped on the steering wheel of a crashed automobile and charged with various traffic offenses including a charge that he violated section 11-501(a)(2) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(2)) which prohibits individuals from driving or being in control of a vehicle while under the influence of alcohol. The case proceeded to a jury trial.

¶ 4 At trial, Chicago Police Officer Mark Gannon testified that, at the time of trial, he had been an officer for over four years. He had received training on driving under the influence investigations and stops and was a certified breath alcohol operator.

¶ 5 Around 6:00 a.m. on the morning of August 17, 2014, Officer Gannon was patrolling 18th Street in Chicago with his partner. They were flagged down by an off-duty fireman, who indicated that there was an apparent accident at the top of the bridge, 328 West 18th Street. At that location, Officer Gannon found a vehicle stopped, at a slight angle, partially in the bike lane and partially in the car lane; the vehicle was still running. He opined that, prior to stopping, the vehicle hit the curb on the bike lane as there appeared to be a tire tread on the curb. Some traffic "placards" protecting the bike lane were knocked down. The front passenger-side wheel was "hanging off the car with its axle touching the ground" and the axle appeared to be cracked.

¶ 6 A man, later identified as defendant, was sitting in the driver's seat with his head against the steering wheel. Officer Gannon opened the passenger-side door, turned the vehicle off, and took the keys out of the ignition. Defendant was breathing but did not wake until Officer Gannon grabbed and shook him. The officer detected a strong odor of alcohol on defendant's breath. Defendant told Officer Gannon that he was in the back seat.

¶ 7 When asked by Officer Gannon if he needed medical attention, defendant stated that he was fine. Defendant was aware of the accident and asserted that he was waiting on a tow truck.

When asked if he called for a tow truck, defendant said no; he could not find his cell phone. Officer Gannon later found defendant's cell phone on the floor mat under the driver's seat.

¶ 8      When defendant got out of the car, he did not fall or lean on the car for support. His clothing was disheveled—the front of his pants were undone and his belt was on very loosely. Defendant admitted to drinking vodka but stated that he had not been driving. Defendant told Officer Gannon that he was only in the driver's seat to engage the emergency flashers. When Officer Gannon observed the vehicle, the flashers were not activated. According to defendant, his friend had been driving the car. Defendant could not give a name but gave the officers two phone numbers both starting with 773 and ending with 6310. Officer Gannon called both numbers, without an answer. Officer Gannon later discovered that defendant owned the vehicle.

¶ 9      Responding to defendant's assertion that he was not driving the car, Officer Gannon told defendant that he was in the driver's seat of the vehicle and that the keys were in the ignition. At this point, Officer Gannon asked defendant if he would take field sobriety tests. Defendant became "irate" and "didn't want to cooperate." Officer Gannon explained that if he did not comply, they would take him to the station where he would be offered further testing. Defendant refused and was taken into custody. At the station, defendant was combative and argumentative. He continued to yell and swear until he would start crying.

¶ 10      Officer Gannon read defendant the "Warnings to Motorist" which informed defendant of the repercussions for refusing to submit to a Breathalyzer test; defendant refused. Officer Gannon placed defendant under arrest, and informed defendant of his *Miranda* rights. Defendant did not submit to an interview with Officer Gannon.

¶ 11      On cross-examination, Officer Gannon testified that, at the time of incident, he had been on the police force for about two years. Based on his personal and professional experience, he

believed defendant to be under the influence of alcohol, citing the odor on his breath, his acknowledgement that he had been drinking vodka, and the "repetitive nature" of his pattern of speech. Officer Gannon believed the car was inoperable but had seen people drive vehicles that were in a worse condition. Driving in this context would mean driving on three wheels.

¶ 12    The State rested and the trial court denied the defendant's motion for a directed verdict.

¶ 13    The defense called David Brown, who knew defendant through a former girlfriend, Tori. Tori and defendant were childhood friends. Brown testified that on August 17, 2014, he was at a party with Tori for four to five hours and did not consume any alcohol. Defendant was at the party and was to drive Brown and Tori home. Tori later asked Brown to drive because "nobody else was able to drive."

¶ 14    When Brown got into defendant's car, he "pulled around to where they were outside, and when I made my turn a big pop sounded and the car couldn't move. I tried to get it out of the street but it couldn't, it couldn't move anymore." Brown stated that he got out of the vehicle, saw that the tire was bent, and left the car in the middle of the street. He and defendant waited on a tow truck for approximately 30 minutes before Brown left.

¶ 15    Brown testified that at some point he received a phone call from a police officer. He could not remember the officer's name, but stated:

> "they asked me questions about who am I, who is the Roy Cromwell, and they even asked me was I driving the vehicle that we left him in. And yeah, they asked me a few questions and said okay, thank you very much and that was it."

¶ 16    On cross-examination, Brown testified that when he arrived at the party around 10:00 or 11:00 p.m., defendant was already there and had been drinking. Brown testified that he was going to drive Tori and defendant home but admitted that he did not know where defendant lived. They

left around 3:00 a.m. Brown was only in the car for two minutes before the 'pop' happened and was the only person in the car when it occurred. The party was somewhere on 18th Street, west of Halsted. According to Brown, the car stopped across the street from the building where the party was located. When he left defendant waiting for a tow truck, defendant was of "very sound mind."

¶ 17 Brown testified that his phone number was 773-491-6310. When asked about the phone call that he received from the police, Brown stated:

> "She asked me did I know a Roy Cromwell and I said yes. She asked me did I, did we leave him in the car, I said yes. And she asked me was I driving the car as if she already knew what to ask me. So she asked me was I driving I said yes, the car had an accident or it broke and we left."

He received the call around 5:00 a.m. Brown did not learn of defendant's charges until a month later.

¶ 18 The defense rested.

¶ 19 In rebuttal, the State recalled Officer Gannon. He arrived at the scene around 6:00 a.m. and observed defendant's vehicle on a bridge that stretched several blocks long. The State rested.

¶ 20 During closing arguments, the parties focused on whether defendant had actual physical control of the car while under the influence of alcohol. After closing arguments, the court instructed the jury. Specifically, the jury was informed that "[a] person commits the offense of driving under the influence of alcohol when he drives or is in actual physical control of a vehicle while under the influence of alcohol."

¶ 21 The jury found defendant guilty of driving under the influence of alcohol. The trial court denied defendant's motion for new trial. Defendant was sentenced to one year of conditional discharge, with conditions of alcohol treatment, a victim impact panel, 30 days of community

No. 1-18-1134

service through the Sheriff's Work Alternative Program, a $1250 fine, and mandatory fees and costs.

¶ 22    Defendant timely appealed.

¶ 23    On appeal, defendant argues that the trial court deprived him of his constitutional right to an impartial jury when it improperly admonished the jurors under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and allowed an alternate juror to participate during deliberations in place of an unchallenged regular juror. Acknowledging that he failed to properly preserve these issues, defendant asks us to review under the plain error doctrine.

¶ 24    "To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Sebby*, 2017 IL 119445, ¶ 48. However, the plain error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error." *People v. Herron,* 215 Ill. 2d 167, 186 (2005). The plain-error doctrine is applied where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski,* 225 Ill. 2d 551, 565 (2007). In either circumstance, the burden of persuasion remains with the defendant. *Herron,* 215 Ill. 2d at 182. The first step is to determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 25    First, defendant argues, and the State concedes, that the trial court erred when failed to comply with Illinois Supreme Court Rule 431(b) when questioning the jury. We agree.

¶ 26    Rule 431(b) requires that the trial court to:

"ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her ***." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 27    We review a purported error under Rule 431(b) *de novo*. *People v. Belknap*, 2014 IL 117094, ¶ 41. A trial court's failure to inquire into a potential juror's acceptance and understanding of all four principles constitutes error. *Thompson*, 238 Ill. 2d. 607. Asking potential jurors whether they have a "problem with" or disagree with" the principles, rather than whether they understand and accept them, constitutes error. *Sebby*, 2017 IL 119445, ¶ 49 (finding "clear error" where the trial court only asked the potential jurors whether they "had any problems with" or "believed in" the principles); *People v. Wilmington*, 2013 IL 112938, ¶ 32 (finding the trial court failed to comply where it only asked potential jurors whether they "disagreed with" the principles).

¶ 28    Here, the trial court admonished the prospective jurors, in a group, as follows:

"I'm going to ask you some general questions first. Let me say this, if your answer to any of the following questions is yes, please raise your hand.

The defendant, *** is presumed to be innocent until the jury determines after deliberations that the defendant is guilty beyond a doubt. Does anyone disagree with this rule of law?

The State has the burden of proving the defendant guilty beyond a reasonable doubt. Does anyone disagree with this rule of law?

The defendant does not have to present any evidence at all, may rely on his presumption of innocence. Does anyone disagree with this rule of law?

The defendant does not need to testify. Would any of you hold the fact that defendant chooses not to testify at trial against the defendant?

\* \* \*

At the end of trial, I'll instruct the jury on the law. The law must be followed even if you personally disagree with it. Would any of you not be able to set aside a personal disagreement any apply the law as instructed? Anyone?"

¶ 29   Although the court discussed each of the four principles of law set forth in Rule 431(b), it failed to ask each of the potential jurors whether they understood and accepted each of the principles. Instead, the court only asked whether the prospective jurors "disagree[d] with" the principles. Therefore, we find that error occurred.

¶ 30   Next, defendant contends that this error warrants reversal under the first prong of the plain error doctrine. We must determine whether "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error \*\*\*." *People v. Piatkowski*, 225 Ill. 2d 511, 565 (2007) (citing *Herron*, 215 Ill. 2d 167, 286-87 (2006)). A reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case. *Belknap*, 2014 IL 117094, ¶ 47. This inquiry involves an assessment of the evidence on the elements of the charged offense, along with any evidence regarding the witnesses' credibility. *Sebby*, 2017 IL 119445, ¶ 53.

¶ 31   To prove defendant's guilt, the State was required to show that he was in actual physical control of a vehicle while under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2012). A defendant need not be driving to have actual physical control of the vehicle. *City of Naperville*

*v. Watson*, 175 Ill. 2d 399 (1997). Actual physical control is determined on a case-by-case basis in consideration of whether the motorist: (1) is positioned in the driver's seat of the vehicle; (2) has actual possession of the ignition key; and (3) has the physical capability of starting the engine and moving the vehicle. *Id.* The State must prove that defendant's ability to operate a motor vehicle was impaired by the consumption of alcohol. *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 36. The State may use circumstantial evidence to satisfy its burden. *Id.*

¶ 32    As to the evidence of actual physical control of the vehicle, Officer Gannon found defendant asleep or unconscious behind the steering wheel of a vehicle that had crashed into a curb and was stopped in the middle of the street. No one else was present. The key was in the ignition and the vehicle was running. Defendant refused medical attention and reported that he was fine. We conclude that the evidence was not closely balanced as to whether defendant had actual physical control of his automobile. See *People v. Heimann*, 142 Ill. App. 3d 197, 199 (1986) ("Actual physical control of a vehicle requires only that one is behind the steering wheel in the driver's seat with the ignition key and physically capable of starting the engine and moving the vehicle.").

¶ 33    Defendant asserts that the evidence was closely balanced as Officer Gannon and Brown offered opposing testimony as to whether defendant's automobile was capable of being driven, and thus creating a question as to whether it was a "vehicle" under the Code (625 ILCS 5/1-217 (West 2012)). Officer Gannon stated that he did not believe the car was operable but noted that he has seen people drive cars in worse condition. Brown testified that he was unable to move the car after hearing a "pop" sound. However, this testimony does not cause the evidence to be closely balanced on the element of actual physical control of a vehicle.

¶ 34 Defendant in arguing that his automobile was not a vehicle cites the statutory language defining "vehicle" for purpose of the Code. A vehicle is defined as "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway." 625 ILCS 5/1-217. However, the statutory provision defining vehicle continues on to explain that "a device shall be considered to be a vehicle until such time it either comes within the definition of a junk vehicle, as defined under [the Code], or a junking certificate is issued for it." *Id.* A "junk vehicle" is "a vehicle which has been or is being disassembled, crushed, compressed, flattened, destroyed, or otherwise reduced to a state in which it no longer can be returned to an operable state." 625 ILCS 5/1-134.1 (West 2012). Here, although the witnesses may have diverged on the condition of the automobile, there is no evidence showing that defendant's vehicle is a "junk vehicle." Therefore, the evidence is not so closely balanced as to whether defendant's automobile can be considered a vehicle and not a "junk vehicle" as defined under the Code. See *People v. Cummings*, 176 Ill. App. 3d 293, 297 (1988) (holding that there was no evidence that the defendant's automobile was a "junk vehicle" where it "had a broken tie rod, was not drivable and had to be towed away").

¶ 35 As to the evidence showing that defendant was under the influence of alcohol, it is undisputed that prior to being found behind the wheel, defendant had been at a party and was drinking. Defendant admitted to Officer Gannon that he had been drinking vodka. Brown confirmed that defendant had been drinking and that defendant was unable to drive. At the scene, defendant insisted that he was in the back seat of the car and was angry and non-cooperative. At the police station, he was swearing, yelling, and crying. Officer Gannon, a police officer trained in driving under the influence stops, opined that defendant was under the influence of alcohol based on a strong odor of alcohol emanating from defendant's breath, defendant's argumentative and combative behavior, his admission to drinking alcohol, and the repetitive nature of his speech

pattern. See *People v. Love*, 2013 IL App (3d) 120113, ¶ 35 (finding that testimony establishing the defendant's breath smelled of alcohol and eyes were bloodshot is relevant in demonstrating the influence of alcohol); *People v. Gordon*, 378 Ill. App. 3d 626, 632 (2007) ("Where the arresting officer provides credible testimony, scientific proof of intoxication is unnecessary."). Further, defendant refused to submit to field sobriety tests. See *People v. Johnson*, 218 Ill. 2d 125, 140 (2005) ("Evidence of a person's refusal to take a test designed to determine the person's blood-alcohol content is admissible and may be used to argue the defendant's consciousness of guilt."). We conclude that the evidence of defendant being under the influence of alcohol was not closely balanced. In light of all the evidence, we reject defendant's contention that Brown's belief that defendant was of "sound mind" requires a different conclusion.

¶ 36    In sum, we conclude that the evidence was not closely balanced as to warrant a reversal based on the trial court's failure to comply with Rule 431(b).

¶ 37    Defendant next argues that the trial court erred when it allowed an alternate juror to sit in the spot of an unchallenged regular juror.

¶ 38    During jury selection, the parties questioned a panel of 14 prospective jurors, and choose nine members to sit on the jury. After the second round of questioning a new venire panel of jurors, the relevant discussion proceeded as follows:

> "THE COURT: Bramm is in. Miller is in.
>
> DEFENSE ATTORNEY 1: Um-hum.
>
> THE COURT: Carlson is in.
>
> DEFENSE ATTORNEY 1: Um-hum.
>
> THE COURT: So we have 12, right?
>
> ASSISTANT STATE'S ATTORNEY: Yes.

DEFENSE ATTORNEY 1: Yes.

DEFENSE ATTORNEY 2: Yes."

* * *

"THE COURT: [] Kerr, yes.

* * *

"THE COURT: Okay. He's in. That's 13.

DEFENSE ATTORNEY 2: And then Curtis.

* * *

ASSISTANT STATES ATTORNEY: And we have a jury.

* * *

DEFENSE ATTORNEY 1: Wait did we do – we already did the alternates.

THE COURT: Yes. Again, [] Bramm, [] Miller, [] Kerr, [] Carlson, [] Curtis.

DEFENSE ATTORNEY 1: You got it.

* * *

THE COURT: All right, the following members of the venire that have been selected as jurors. [*sic*] [] Bramm, [] Miller, [] Kerr, [] Carlson, [] Curtis."

At this time, all of jurors were sworn in by the clerk of the court.

¶ 39    Prior to deliberations, the trial court stated that it was releasing the alternate jurors, Carlson and Curtis. Defense counsel expressed agreement. Carlson and Curtis were released. The verdict form was signed by 12 persons, including Kerr.

¶ 40    Defendant argues that based on the discussions above, Carlson was chosen as the last regular juror and was improperly replaced by Kerr at the start of deliberations. Citing *People v. Babbington*, 286 Ill. App. 3d 724 (1997), defendant maintains that plain error occurred.

¶ 41 In *Babbington*, we held that the undeniable participation of a 13th juror in deliberations constituted plain error that caused substantial prejudice to the defendant. *Id.* at 733-34. Prior to deliberations, the trial court dismissed the alternate jurors, but the verdict forms included the name of one of those alternates and omitted the name of a seated juror. *Id.* 731-32. The alternate juror also responded during the polling of the jury. *Id.* 732. This court, in assuming the alternate juror's participation was in error, found that the participation during deliberations, not mere presence during deliberations, was prejudicial. *Id.* 734-35. The court found that the alternate's signing of the verdict form made it "clear that [she] participated in the deliberations," and it thus could not be said "that her presence had no impact on the jury's verdict." *Id.* at 735. The appellate court reversed and remanded the case for a new trial. *Id.*

¶ 42 The State contends that defendant waived his objection to the participation of Kerr as a regular juror relying on *People v. Escobedo*, 151 Ill. App. 3d 69 (1986) and *People v. Patterson*, 163 Ill. App. 3d 370 (1987). We agree.

¶ 43 In *Escobedo*, the defendant argued that he was deprived of his right to an impartial jury when a prospective juror, whom defendant had peremptorily challenged and the trial court had excused during *voir dire*, served on the jury. 151 Ill. App. 3d at 86. Defendant argued that he and his attorneys were not aware of the juror's participation until they reviewed the record on appeal. *Id.* The court noted that defendant and his attorney had an opportunity to view the excused juror as she participated during the trial and further had a duty to advise the court of any infirmity in the jury as sworn at the earliest opportunity. *Id.* By failing to recognize and call to the court's attention the fact that a juror who was challenged and excused was in fact in service upon the jury, defendant waived this issue for purposes of appeal. *Id.* at 87-88.

¶ 44   In *Patterson*, a prospective juror who had been peremptorily challenged by the State and excused by the trial court signed the verdict form. 163 Ill. App. 3d at 374. The court found that defendant waived the right to argue that the integrity of his trial had been jeopardized by the participation of the excused juror, since he never objected to the composition of the jury at any time during the trial or jury deliberations, never objected to the juror's presence at the return of the verdict or at the polling of the jury and failed to raise the matter in his motion for new trial. *Id.*

¶ 45   This court, in *Babbington*, differentiated the facts of its case to those of *Escobedo* and *Patterson*, finding:

"In *Escobedo* and *Patterson*, the excused juror's participation on the jury occurred at the commencement of trial and continued throughout the trial. Thus, defendant and his counsel had ample opportunity to notice that the excused juror was sitting on the jury and to bring this error to the attention of the court. Here, however, juror Smith served as an alternate throughout the trial and was unequivocally excused when deliberations began. Any impropriety concerning Smith did not occur until deliberations began, when Smith either participated in deliberations in addition to a regular juror or instead of a regular juror. Defendant and his counsel would have had only a brief opportunity to notice Smith's participation on the jury after the verdict was returned and the jury was polled. During these few minutes nobody, not even the court or the State, noticed the alternate juror's participation. Under these circumstances, we find no waiver based on defendant's failure to object to Smith's participation in deliberations." 286 Ill. App. 3d at 733.

¶ 46   We find that facts of the current case are also distinguishable from *Babbington* and more similar to *Escobedo* and *Patterson*. Defendant had ample time to notice and object to the inclusion of Kerr as a juror but did not. After the parties chose 14 persons for the jury, the court prior to

swearing the panel, twice, listed the list three chosen jurors and then the two alternates, as "[] Bramm, [] Miller, [] Kerr, [] Carlson, [] Curtis." A defense attorney vocalized agreement with the court. Further, before deliberations, the court stated that "last two picked [] Carlson and [] Curtis will be excused after instructions as alternate jurors. Everyone is in agreement" and a defense attorney replied "Yes." At no time did defendant object to this composition of the jury. Therefore, we find defendant has waived his objection to the participation of Kerr as a regular juror.

¶ 47    For the reasons stated above, we affirm the judgment of the trial court.

¶ 48    Affirmed.